THE BOSTON FRANKLINITE COMPANY *vs.* CONDIT and TORREY.

1. A conveyance to two, without the words " to be held as joint tenants and not as tenants in common," creates a tenancy in common, without survivorship, even when it is to them as trustees. There is nothing in the statute to control the plain meaning of the words, which must have effect, unless this leads to an evident absurdity, or defeat the design of the act.

2. A subsequent statute cannot change or divest estates, vested before its passage. The act relative to trustees, passed April 1st, 1868, so far as intended to be retrospective, is inoperative.

3. Lands held in trust, upon the death of the trustee, descend according to the rules of the common law, to the eldest son ; they are not within the statute of descents.

4. Where lands are conveyed in trust to sell, both trustees must unite in the conveyance, in order to execute the trust. If one conveys, it will only transfer his legal estate, subject to the trust. Whether both trustees must join in one deed : *Quaere.*

5. One tenant in common cannot convey a particular part of the common property, or an easement in it, as the right to dig ores, to the prejudice of his co-tenant. Such conveyance is void as to the co-tenant, but good as against the grantor.

6. A grantee of the right to dig ores, from one tenant in common, cannot call for a partition of the premises.

This cause was argued on pleadings and proofs.

*Mr. Haines* and *Mr. McCarter*, for complainant.

*Mr. Bradley,* for defendants.

THE CHANCELLOR.

The bill is for partition. The complainant claims title to one equal moiety or half part of the iron, zinc, and other ores, in a tract of land in the county of Sussex, known as the Ogden Mine Tract. The defendants are seized of the fee of the whole tract, subject to the right of the complainant. This title is not disputed by the complainant; but the defendants deny the title of the complainant to one-half the ore in the tract, or to the ore in an undivided half of the tract, and deny the right to have partition.

Samuel G. I. DeCamp was seized of the Ogden Mine Tract in 1817. On the 26th day of March in that year, he, with his wife, conveyed it, with other property, to W. Darrah and W. F. Kerr, in fee, in trust to sell and pay his creditors out of the proceeds. In May, 1830, W. Darrah died, leaving H. T. Darrah, his eldest son, and other children, surviving. On the 13th day of April, 1833, Kerr, the surviving trustee, by deed, reciting the conveyance in trust, and that he conveyed as surviving trustee, conveyed the Ogden Mine Tract

to J. E. Edsall and S. Fowler, for the consideration of $50, the tract containing twenty and a half acres. On the 1st day of September, 1836, Fowler and wife, by deed dated on that day, in consideration of $21,000, conveyed to Witherill and Ames, in fee, six tracts of land, described by metes and bounds, containing about thirty-two hundred acres, which did not include the Ogden Mine Tract; and " also all the iron, zinc, and other ores, on or within any of the lands of the said S. Fowler, in the county of Sussex." The deed .contained full covenants of ownership, seizin, freedom from encumbrance, right to convey, and of warranty, as to the " lands and premises *described in it.*" By several mesne conveyances, this right to ores in the Ogden Mine Tract, if any was conveyed to.Witherill and Ames, was conveyed to and vested in the complainant.

On the 14th day of October, 1836, Henry T. Darrah, with two other children of W. Darrah, deceased, by deed reciting the conveyance by Kerr, and in consideration of $1, did grant, bargain, sell, alien, enfeoff, convey, and confirm, unto Edsall and Fowler, the said Ogden Mine Tract. S. Fowler, by deed dated August 25th, 1843, conveyed to his son, S. Fowler, jun., the undivided half of this tract, with covenants against his own acts; and S. Fowler, jun., on the 3d of February, 1847, conveyed this undivided half to Edsall. The title of Edsall in the tract, was by several mesne conveyances vested in the defendants.

The defendants contend, first: That the deed from De Camp to Kerr and Darrah, conveyed the title to them as tenants in common, and that on Darrah's death, the title to one-half vested in his son Henry, and did not survive to Kerr; that the deed from Kerr to Fowler was void, as one trustee cannot alone execute a trust, or convey the part of which the legal title is vested in him, without his co-trustee joining; and that as the conveyance from H. T. Darrah to Fowler was not until after Fowler's deed to Witherill and Ames, no title to this lot or the ores in it, passed by that deed. Secondly: That if any title did pass to Fowler and

Edsall by Kerr's deed, it was only the title to the one half which was vested in Kerr, and that Fowler did and could convey to Witherill and Ames, only his share, or one undivided fourth. Thirdly : That Fowler, being only a tenant in common, could not convey any specific part of the land, or any right to ores, or any other easement in the common property, and that such conveyance was void as against Edsall, his co-tenant. Fourthly : That the effect of the words, " all the ores on or within any of the lands of said S. Fowler, in the county of Sussex," is to convey only the ores on Fowler's lands, and not on lands of him and Edsall, on which he had no right to convey *all* the ores.

The first question is, whether the deed from DeCamp conveyed this land to Darrah and Kerr as tenants in common, or joint tenants. It was five years after the act of 1812, (*Nix. Dig.* 150, § 34, *Rev. Laws* 650,) which declares that no estate shall be considered in joint tenancy, unless it be expressly set forth in the grant creating it, that it is the intention of the parties to create an estate in joint tenancy, and not an estate of tenancy in common. This deed contains no such words ; it is simply to the grantees, " their heirs and assigns," " to have and to hold to them, their heirs and assigns ;" and if this statute is applicable to lands conveyed in trust, this tract by force of it was vested in them as tenants in common. The words of the statute are general, and clearly include grants or conveyances to trustees. There is nothing in the statute to limit it so as to exclude trusts. There is nothing in the preamble of the statute to limit the natural meaning of the words ; it simply recites that, " Whereas, estates granted to a plurality of persons have heretofore been held to be estates in joint tenancy," therefore it was enacted, &c. It shows that the object was to change the rule, and that the words which before created a joint tenancy should thereafter create a tenancy in common. The object, no doubt, was to give to the words used the effect which most persons would suppose they had. When lands were conveyed to two persons and *their* heirs, few sup-

posed that the heirs of the one who happened to die first would have none of it, and that they gave it to the survivor and *his* heirs. There was the same reason for changing the law in the case of trust estates as in other cases. A person choosing two trustees does so because he wants more than one, and naturally may suppose when he conveys to two and their heirs, that if one dies his heir will act with the survivor. To be sure, the evil consequences would not be so great in the case of a trust estate as in other cases; but the wrong to be remedied existed in that case as in others. No wrong results from applying the act to trust estates. And although cases exist in which a construction has been given to a statute, different from the plain meaning of its words, they are cases in which these words have been extended to matters plainly within the mischief to be remedied, or in which the application of the words in the full extent of their natural meaning, would work evident injustice, or lead to great absurdity, which was evidently not intended or contemplated. In this case, there is no injustice or absurdity whatever; the only question is, whether, if the case of trustees had been brought to the consideration of the legislature, they would have thought it wise or expedient to include them in its provisions. As it is, they thought of no cases which it was expedient to except, and did not except any. No case is cited where an exception has been made from the plain words of a statute, because the court was of opinion that it would have been better or wiser to except such cases, or that the legislature would have excepted them, if appealed to on the subject. It is much better for courts to be governed by the plain words of a statute than to aim at evading their effect, even for good ends; and in no case should they be over-ridden, except one of evident necessity to effect an intention plainly shown.

The act relative to trustees, passed April 1st, 1868, (*Nix. Dig.* 1006,) was intended to change this rule in the case of trustees, and had it been passed before 1817, would have made this an estate in joint tenancy. This act was intended

to have a retrospective effect, and by its words applies to all estates theretofore granted, and thereafter to be granted. And although an act will not be construed to have a retrospective effect, unless its words expressly require it, yet this act must be so construed. But so far as it affects estates vested before its passage, it must be held to be unconstitutional and inoperative. This principle has been held by the courts of this and other states, to limit the operation of the act relating to married women, in cases where the husband's right had vested. *Van Note* v. *Downey*, 4 *Dutcher* 219 ; *Ryder* v. *Hulse*, 24 *N. Y. R.* 372 ; *Westervelt* v. *Gregg*, 12 *N. Y. R.* 202.

The comparison made in the preamble of the act of 1868, between the act directing the descent of real estate, and the act of 1812, shows a want of attention to the expression in the act of descents, by which it is held not to apply to trust estates. The first words in the first section of the act of descents are, " when any person shall die seized of any lands *in his or her own right*, in fee simple." By force of these words the statute cannot be applied to persons who die seized *in trust* for others, and not in their own right. At common law a power in trustees, when coupled with an interest or estate in the trust property, survived, but this was because the estate survived. It is so laid down by Lord Coke. *Co. Litt.* 113 *a*. And this is the authority referred to in all subsequent cases on this subject. A naked power without interest never survived. *Lane* v. *Debenham*, 11 *Hare* 188.

The deed from DeCamp, must be held to have conveyed this tract to Darrah and Kerr, as tenants in common, and upon the death of W. Darrah, his undivided half descended to his eldest son, H. T. Darrah, who became seized as tenant in common with Kerr, in trust for the purposes in the deed of DeCamp; that is, in trust to sell this tract, and with the proceeds to pay creditors.

This power must be exercised by both trustees; one alone cannot execute it. The trust is, to sell the whole property, or rather the whole estate, as it may be sold in parcels. A deed

by one trustee might convey his legal estate in a moiety subject to the trust, but could not convey any beneficial interest in the estate. 2 *Story's Eq. Jur.*, § 1280; *Hill on Trustees* 305; *Willis on Trustees* 136; *Lewin on Trusts* 297 & 298; *Attorney General* v. *Gleg*, 1 *Atk.* 356; *Holcomb* v. *Holcomb's ex'rs*, 3 *Stockt.* 286; *Sinclair* v. *Jackson*, 8 *Cow.* 553, 554, 582, 584; *Wilbur* v. *Almy*, 12 *How.* 180; *Chapin* v. *First Universalist Soc.*, 8 *Gray* 580.

If this be law, then at the date of the deed from Fowler to Witherill and Ames, he owned no part or interest in the tract, or at best was a mere trustee of the legal estate. And the general words in this deed, "also all ores on or within the lands of said Fowler in Sussex county," did not convey any right in this tract, as it did not belong to Fowler, at least in the sense there intended. It would not be pretended that they would convey the ores in lands which he held as trustee for a stranger. Nor did the subsequent deed from Henry T. Darrah, if it be held sufficient to complete the title in Fowler and Edsall, aid Witherill and Ames. Fowler's deed to them warranted the *described* lands and premises only, and the covenants cannot be held to apply to any other lands that he might own, or to imply that he owned any other. The grant of ores could not be extended to lands that he had agreed to purchase, and which were afterwards conveyed to him. The title, then, which he acquired by the conveyance being made efficacious by the deed from H. T. Darrah, could not pass to Witherill and Ames by estoppel, and, therefore, enured to the grantees, Edsall and Fowler, for their own benefit, and is now held by the defendants.

The third position of the defendants is, that if the conveyance to Edsall and Fowler was valid, Fowler being a tenant in common, could not, as against Edsall, convey his right to any specified portion of the premises, or any right in the same, to the prejudice of his co-tenant. This seems to be the established rule of law. Such deed will be held to bind the grantor, but as to his co-tenant it is void. The reason is, that it would prejudice the right of the co-tenant to a partition. Each

tenant in common of an undivided moiety, has a right to partition by having one half of the whole premises set off to him; he must not be compelled to partition one part with one co-tenant, and another with another co-tenant, as he would be if such conveyance were good; but the partition must be made into two shares between him and his co-tenant, and then if the part conveyed by the co-tenant shall fall within the share allotted to him, his deed for the same will bind him, and convey it to his grantee. So, if the ores in one undivided half be conveyed as in this case, the co-tenant will not be affected by it, but would be entitled to a partition of the whole between him and his original co-tenant, without regard to the rights of the grantee. The whole tract must be divided into two shares equal, not in quantity, but in value; the ores and mines on one part would be valued as against the meadows, water-power, or buildings, on the other part. And if the part containing the mines or minerals, were allotted in partition under the acts requiring partition by lot, or assigned on other proceedings to the co-tenant, he would have the right to retain it, although the grantee of the ores should thereby lose all right. His title as against such co-tenant is void. In this case, the title to the land having become vested in Edsall in severalty, and through him in the defendants, there can be no partition, and the right conveyed by Fowler to Witherill and Ames, cannot have effect given to it, assuming that Fowler had title at the time of that grant. The doctrine that a conveyance by a tenant in common of a specific part of the lands held in common, or of a special right or easement in the common lands, is void as against the co-tenant, is founded on principle, and sustained by many authorities. 4 *Kent's Com.* 368; 1 *Washb. on Real Property*, 417, § 5; *Porter* v. *Hill*, 9 *Mass.* 34; *Bartlet* v. *Harlow*, 12 *Mass.* 348; *Varnum* v. *Abbot, Ibid.* 474; *Blossom* v. *Brightman*, 21 *Pick.* 283; *Peabody* v. *Minot*, 24 *Pick.* 329; *Adam* v. *The Briggs Iron Co.*, 7 *Cush.* 361; *Griswell* v. *Johnson*, 5 *Conn.* 363.

2 L*

This doctrine was adopted and approved in this court by Chancellor Williamson, in *Holcomb* v. *Coryell*, 3 *Stockt.* 548.

On both grounds, I feel compelled to hold that the complainant has no title to this ore, that is valid as against the defendants, or that will entitle the complainant to a partition, or any other relief as against them.

The bill must be dismissed.