MARY J. CLEMENT et al., respondents,

*v.*

YOUNG-MCSHEA AMUSEMENT COMPANY, appellant.

[Argued November 29th, 1905. Decided June 18th, 1906.]

1. A lease of real property for more than three years, signed by an agent whose authority is not in writing, has against the principal no other force or effect either in law or in equity than a lease at will, because of the first section of the statute of frauds. *2 Gen. Stat. p. 1602.*

2. A written contract purporting to be made between A and B is not, under the statute of frauds, sufficient evidence of a contract between A and a third person who is not mentioned in the writing.

3. The director of a corporation has no authority, as director, to act for the corporation except in his place as a member of the board of directors.

4. The director of a corporation acquires no additional authority to act for the corporation from the fact that he owns a majority of the corporate stock.

5. Persons accepting from an agent a lease of real property for more than three years are bound to ascertain whether he has written authority for executing it.

6. When an agent executes a contract beyond the scope of his authority, the principal will not ordinarily be deemed to have ratified it, or to be estopped from repudiating it unless he appears to have had actual or constructive notice of its terms.

7. If an agent, having unwritten authority to make leases of real property, executes a lease for more than three years, the knowledge of his principal that the tenant is in possession and paying rent is not sufficient to work either ratification or estoppel.

, 8: If an agent, having unwritten authority to make leases of real property, executes a lease for more than three years, ratification or estoppel will not be inferred against his principal from knowledge that the tenant was making trade improvements, unless the improvements, of which he had notice, were such as indicated possession under a lease beyond the agent's authority.

9. The knowledge of an agent that he has overstepped the bounds of his authority cannot be imputed to the principal.

10. Knowledge possessed by one person cannot be imputed to another, unless there exists between them a relation of agency, in the exercise of which the knowledge would be pertinent. .

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bergen, whose opinion is reported in *69 N. J. Eq. 347.*

From July 1st, 1892, until the filing of the present bill, the Young-McShea Amusement Company was the owner of a building fronting on the boardwalk in Atlantic City, and known as "Young's Hotel." That company is a New Jersey corporation, having fifteen hundred shares of capital stock, and during the transactions involved in this litigation John L. Young owned about fourteen hundred and forty of those shares, and was the treasurer and a director of the company. Messrs. Thompson and Fralinger were the other directors, Mr. Thompson being also the president, and William E. Shackelford, a son-in-law of Young, was the secretary. For a long time Young had controlled the affairs of the company, having unwritten authority to lease its property, and Shackelford had been his manager. Shortly before May 1st, 1902, Thomas J. Clement saw Young with regard to obtaining a lease of a portion of the entrance to "Young's Hotel" as a stand for the sale of orange juice and similar beverages, and he and Young agreed upon the price. Afterwards, Shackelford handed to Clement a lease of the proposed stand and its appurtenances, which is now produced by the complainants as the basis of their claim. It reads as follows:

"This indenture, made the first day of May, A. D. nineteen hundred and two, between John L. Young, of Atlantic City, N. J., party of the first part, and M. J. Clement, of the same place, party of the second part, do grant, demise and to farm let unto the said party of the second part, a

certain space situate on the south side of entrance to apartment house, seven feet front on boardwalk by forty feet deep (back to steps), also basement under entrance sixteen feet by forty feet, with the appurtenances, ten years from July 1, nineteen hundred and two, at the rent or sum of two thousand dollars, to be paid $500 on May 1st; $500 on July 1st; $500 August 1st, and $500 August 15th, of each year."

Then are inserted provisos and covenants, not now important, and finally:

"And the said party of the first part do covenant with the said party of the second part, on paying the said rent, and performing the covenants aforesaid, shall and may peaceably and quietly have, hold and enjoy the said demised premises for the term aforesaid.

"In witness whereof, the said parties have interchangeably set their hands and seals hereto the day and year first above mentioned.

"JOHN L. YOUNG,
"W. E. S.,
"M. J. CLEMENT."

M. J. Clement, named as the lessee, is the wife of Thomas J. Clement, and the signature "John L. Young" is in the handwriting of Shackelford, whose initials are added.

At the time the lease was made Mr. Clement knew that the company was the owner of "Young's Hotel," but did not know that the company was a corporation.

On July 1st, 1902, Mr. and Mrs. Clement, in pursuance of the provisions of the lease, took possession of the demised premises, and fitted up the same appropriately for their business at an expense of more than $6,000, and have since, up to the present time, carried on business therein. They have also regularly paid the rent prescribed to Shackelford, who collected it as Young's agent, and deposited it to Young's credit in bank, and Young has annually included it as so much rent collected in his reports to the company on the state of accounts between the company and himself.

It does not appear that any counterpart of the lease was ever made or that any director or officer of the company, except Young and Shackelford, had any notice of its terms, but every one of them knew that the Clements were occupying the premises as tenants.

In July, 1904, the company brought an action of ejectment

against the Clements, and thereupon they filed the present bill to enjoin the prosecution of that suit, and to have the above lease established as binding and obligatory upon the company. After full hearing the chancellor decreed that the company should be perpetually enjoined from prosecuting the ejectment suit; that the instrument above set forth was the act of the company, and that the proper officers of the company should forthwith sign, execute and deliver the same to Mrs. Clement as of May 1st, 1902. From this decree the company appeals.

*Messrs. Thompson & Cole,* for the appellant.

*Mr. Howard Carrow* and *Mr. Joseph R. Wilson* (of Philadelphia), for the respondents.

The court having conferred upon this case and reached a conclusion therein, requested Mr. Justice Dixon to prepare an opinion. The following was prepared and copies distributed by him among the members of the court shortly before his death. It has been approved and adopted as the opinion of the court.

DIXON, J.

The written instrument upon which the complainants base their claim was incapable of creating the term of years therein mentioned, either against the company or against Young, the lessor, because of the first section of the statute of frauds (*2 Gen. Stat. p. 1602*), which enacts that

"All leases * * * of * * * any * * * tenements * * * made or created * * * by parol and not put in writing and signed by the parties so making or creating the same, or their agents thereunto lawfully authorized by writing, shall have the force and effect of leases at will only, and shall not either in law or equity be deemed or taken to have any other or greater force or effect * * * except, nevertheless, all leases not exceeding the term of three years from the making thereof."

The lease was signed by Shackelford, who had only unwritten authority from Young, and no authority whatever from the

company. Consequently, as a lease, it had, both in law and equity, merely the force and effect of a lease at will. Even if it had been signed by Young himself, under his authority from the company, it would have had no greater force against the latter, because the authority was not conferred by writing. But the instrument contains, beside the implied covenant for quiet enjoyment, presumed from the word "demise" (*1 Washb. Real Prop. 325*) an express covenant of like character, and it may be that such a covenant should be held to be covered by the fifth section of the statute of frauds as a contract concerning lands which an agent may lawfully sign without written authority. Assuming this to be so, the covenant would of itself be sufficient evidence of Young's contract, the authority of Shackelford to sign for him being unquestioned, but it would be inadequate against the company, under the decisions in this state, because it nowhere points out the company as one of the parties. *Schenck* v. *Spring Lake Beach Improvement Co., 47 N. J. Eq. (2 Dick.) 44; Bowers* v. *Glucksman, 68 N. J. Law (39 Vr.) 146.*

But even if it be conceded that the complainants may discard the written instrument, except as indicating the terms of an oral contract made with Young, on the strength of which they entered into possession of the premises and made improvements thereon, then we are brought to these questions: (1) Had Young authority from the company to make the agreement? (2) had the complainants a right to assume that he possessed such authority? (3) is the company estopped from denying his authority? (4) has the company ratified the agreement?

1. Merely as a director, Young had no authority to act for the company except in his place as a member of the board of directors. *Titus* v. *Cairo and Fulton Railroad Co., 37 N. J. Law (8 Vr.) 98; Demarest* v. *Spiral Tube Co., 71 N. J. Law (42 Vr.) 14.* Nor did the fact that he owned a large majority of the corporate stock enable him to bind the corporation. *Allemong* v. *Simmons, 124 Ind. 199.* The testimony clearly warrants the inference that his authority extended to the making of leases of the company's property, but it appears not to

have been intended to embrace the making of leases or contracts for long terms. In one instance only, beside the present, did he give a lease for more than three years, and that was, as this is, in his own name as lessor, and the company had no notice of its duration. On several occasions, when Young wanted to make leases for long terms two of the directors (the board consisting of three, or perhaps four) declared themselves not willing that he should do so.

We therefore conclude that his actual authority was not sufficient to support the agreement.

2. The complainant Thomas knew when he took the lease that Young was not the owner of the property, and although the lease was taken in the name of his wife the evidence shows that the lease and the business carried on under it are the property of the husband. Moreover, both the complainants, in now contending for the enforcement against the company of a contract made with Young as its agent, must assume the responsibilities growing out of that contention, and must show that in dealing with him as agent they bound the company as principal. The transaction between Young as agent and the complainants was the delivery and acceptance of a lease for ten years, with the ancillary and incidental covenants. To render that transaction valid, either in law or equity, against Young's principal, his authority must have been in writing, and where a written authority is required by the very nature of the transaction it is the duty of persons dealing with the agent to make inquiries as to the nature and extent of the authority and to examine it. *Story Ag.* § 73. This, of course, implies that third parties have no right to assume the existence of such authority when none is produced. It would be unreasonable to hold that an agent whose agency must, under a legislative rule of public policy, like the statute of frauds, be created by writing, might be dealt with as if such writing existed without any effort to ascertain its existence. Equally unreasonable would it be to hold that an agent appearing to have merely unwritten authority to make leases, which under such a rule cannot, either at law or in equity, bind his principal for more than three years, may yet make a contract incidental or ancillary to a

lease, which in equity will bind the principal for a.longer period, in the discretion of the agent. These considerations prevent us from adjudging that the complainants had a right to assume that Young had the authority necessary to maintain their contract against the company.

3 and 4. The claims of estoppel and ratification are both barred by a single fact—that the company had no notice, either actual or constructive, that the complainants possessed, or believed they possessed, a lease for a longer term than Young's unwritten authority entitled him to give, or that its.own rights, consistent with the proper exercise of his authority, were in anywise infringed.

The necessity for such notice as the basis of either estoppel or ratification is clear. *Ramsden* v. *Dyson, L. R. 1 E. & I. App. 129, 142; Kirchner* v. *Miller, 39 N. J. Eq. (12 Stew.) 355; Sumner* v. *Seaton, 47 N. J. Eq. (2 Dick.) 103; Perkins* v. *Moorestown and Camden Turnpike Co., 48 N. J. Eq. (3 Dick.) 499; Central Railroad Co.* v. *MacCartney, 68 N. J. Law (39 Vr.) 165, 175; Story. Ag.* § *239; Combs* v. *Scott, 12 Allen 493; Gulick* v. *Grover, 33 N. J. Law .(4 Vr.) 463; Titus* v. *Cairo and Fulton Railroad Co., 46 N. J. Law (17 Vr.) 393; Annan* v. *Hill U. B. Co., 59 N. J. Eq. (14 Dick.) 414, 420; Dowden* v. *Cryder, 55 N. J. Law (26 Vr.) 329.*

It remains to consider whether the company is chargeable with notice that the complainants had, or believed they had, a lease·for more than three years.

The company must undoubtedly be charged with notice that the complainants were in possession of the premises occupied by them and were paying rent therefor to Young. But this was all consistent with the idea that they had become tenants under the authority actually vested in Young.

It should also be charged with notice of the improvements made by the complainants so far as those improvements were open to the observation of the public or of the company as possessor of the residue of the property, but it cannot be charged with notice of other improvements made upon the premises exclusively occupied by the complainants. The testimony does not indicate to what extent the complainants' improvements were

observable by the public or the company, and consequently we cannot say that the company was bound to infer therefrom that the complainants were acting upon a claim greater than the authority of Young could confer.

To this extent only was any notice given to the company or its officers or directors (outside of Young and Shackelford), and we deem it inadequate to impose upon the company the duty of inquiring whether Young had transgressed the limits of his power. Until such an inquiry became a duty the company was entitled to assume that its agent had acted rightfully, and its acquiescence would work neither ratification of his unauthorized act nor estoppel against repudiation of it.

Finally, it is urged that the knowledge of Young and of Shackelford should be imputed to the company.

Assuming that Young, in executing the lease, was attempting or appearing to act for the company, notwithstanding the form of the instrument, then, if his knowledge that he was overstepping the bounds of his authority is to be deemed notice thereof to his principal, no effective limitation can be imposed upon the power of an agent. By the very act of transgressing the limits of his authority the agent would generally, for all practical purposes, enlarge them to the full extent of his transgression. Nothing short of immediate personal investigation on the part of the principal would in most instances protect his rights. An examination of the cases already cited will show that such a doctrine has no place in either legal or equitable jurisprudence.

The knowledge of Shackelford cannot be imputed to the company because he was never authorized to act as its agent in any matter to which that knowledge was pertinent. His testimony is explicit and uncontradicted that in signing the lease and collecting the rent he acted solely on behalf of Young, and had no authority whatever from the company. Although he was secretary of the company during the running of the lease and became a director in November, 1903, yet in neither capacity did any duty rest upon him concerning the complainants' tenancy. Whether the view stated in Sooy v. State, 41 N. J. Law (12 Vr.) 394, or that stated in Willard v. Denise, 50 N.

*J. Eq. (5 Dick.) 482,* be adopted, knowledge possessed by one person cannot be ascribed to another unless there exists between them a relation of agency, in the exercise of which the knowledge would be useful.

We find no ground on which, consistently with established rules, the decree below can be supported, and it must be reversed and the bill dismissed.

*For affirmance*—DILL—1.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, FORT, GARRETSON, HENDRICKSON, SWAYZE, REED, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY—12.