On April 3d 1925, the defendants were the owners, as tenants in common, of a farm threaded by a trout brook, and entered into an agreement to convey the same to the complainant for the sum of $6,000. On that date the complainant executed and acknowledged a contract for that purpose and remitted the same to the defendants, with his check for amount of deposit agreed upon. On April 5th, which was Sunday, the defendants executed and acknowledged the contract, and on the following day delivered one of the duplicate copies to the complainant's attorney. The contract, by its terms, was, in all respects, valid and enforceable, except *Page 185 
for the effect to be given to the execution of the same upon the Sabbath.
It is argued by the defendants' counsel that the contract stood complete immediately upon the defendants signing it and the acknowledgment by those of them who were married women. With this reasoning I am unable to agree. It would seem to me that, until they had completed the transaction by delivering back to the complainant a properly-executed copy of the agreement, that they were in no sense bound. The defendants concede that, ordinarily, a contract required to be in writing is not complete until the writing is delivered, but they say that where there is a mutual intention to the contrary the contract is effected immediately upon execution by all the parties, and rely upon Fitzgerald v.Metropolitan Life Insurance Co. (Supreme Court of Vermont),98 Atl. Rep. 498. The contract under consideration, which, of course, was required to be in writing, provided that the complainant should have possession upon the signing of the contract, and upon this slim foundation is built the argument that the parties intended the signing to complete the transaction. In ordinary negotiations of this kind the contract is prepared and executed simultaneously by all the parties, in which event each one receives his copy thereof and departs about his business. Under those circumstances, delivery is contemporaneous with the signing, and the contract is complete. But in a case like the present one, where an understanding is arrived at, and one of the parties is to prepare the formal evidence thereof at a distant place and transmit the same to the other for execution, it is only fair that the former should not be bound by the action of the latter until he is properly apprised thereof by delivery back to him of an executed copy. Otherwise, he would be in ignorance as to the rights or obligations thereunder. He would not know that the other had completed the bargain and bound himself, or whether he had altered it. He would be left in darkness as to all the conditions he would have to meet at the time fixed for passing title. Every dictate of fairness would seem to require delivery of such a contract. *Page 186 
The second point presented arises out of the following facts and circumstances: At the time the negotiations were had for the sale of the farm, one of the defendants informed the complainant that one Green had been granted a right by one of the tenants in common to fish the trout brook for a period of ten years from April 1st, 1923. Thereupon complainant's counsel, in effect, advised the defendants that the agreement granting such fishing rights was invalid, and thereupon the defendants, relying upon the advice of complainant's counsel, consented to enter into the contract, which is the basis of this suit.
I am unable to agree with counsel for complainant that a mutual mistake of law is not sufficient ground upon which to annul a contract. The subject is an intricate one, and, for reasons which will become apparent, there is no reason to enter upon a discussion of the doctrine which is accurately set forth in Pom.Eq. Jur. §§ 841 et seq. But the doctrine of mistake is not involved, for the reason that no mistake is made to appear. It is elementary that one tenant in common cannot bind the others by such an agreement as the one under consideration, either oral or written, except when he acts as the duly authorized agent of the others. Boston Franklinite Co. v. Condit Torrey, 19 N.J. Eq. 394.
The first section of the statute of frauds and perjuries (2 Comp. Stat. p. 2610) requires that "any uncertain interest of, in, to or out of any messuages, lands, tenements or hereditaments" shall be in writing, "and signed by the parties so making or creating the same, or their agents thereunto lawfully authorized by writing." In Cobb v. Davenport,33 N.J. Law 223, and Albright v. Cortright, 64 N.J. Law 330, it has been decided that the only mode of acquiring a right of taking a profit on another's soil is by grant or prescription, which, of course, implies a grant. Therefore, the attempted fishing agreement of Green's falls, by reason of the fact that no grant in writing, signed by the parties, "or their agents thereunto lawfully authorized by writing" (2 Comp. Stat. p. 2610), is pleaded in the answer or counter-claim. *Page 187 
To meet this situation, defendants' counsel then takes the position that if there was no authorization in accordance with the statute for the execution of the fishing agreement with Green, there was a sufficient ratification by the other tenants in common to take the matter out of the statute. The difficulty with this was dealt with by the court of errors and appeals inClement v. Young-McShea Amusement Co., 70 N.J. Eq. 677. The statute of frauds converts any interests in land, not put in writing and signed by the parties or their agents authorized in writing, into leases or estate "at will only." Therefore, when the co-tenants accepted the benefits of the fishing agreement with Green, they had a right to suppose that his interest did not exceed the quantity circumscribed by the statute, and that he had what he now has, namely, a right, terminable at the will of the grantor or his successor. In Clement v. Young-McShea, supra, a lease was signed for a period of ten years by an agent who was not authorized so to do in writing. The lessees filed a bill to enjoin the agent's principal from the prosecution of an action of ejectment, and pleaded therein the aforementioned lease. Upon an application of the statute of frauds, the lessees contended that the principal was barred, in the eyes of this court, under the doctrine of notice. The court of errors and appeals (at p. 683) say:
"The company must, undoubtedly, be charged with notice that the complainants were in possession of the premises occupied by them and were paying rent therefor to Young. But this was all consistent with the idea that they had become tenants under the authority actually vested in Young.
So, in the case at bar, it must be assumed that the defendants knew that Green was exercising the right of profit a prendre.
But this, in the language of Mr. Justice Dixon in the opinion just mentioned, was entirely consistent with the brief that the managing tenant had invested Green with no greater right than he was legally authorized to do.
For these reasons, it is inconceivable that the defendants could prevail if this matter should go to final hearing and they were able to prove every allegation of the answer. The *Page 188 
counter-claim being based upon a like set of facts, it is equally clear that, as counter-claimants, they could not obtain the relief sought under the completest proofs of the allegation of that instrument. Consequently, the provisions of section 4 of the Chancery act, 1915 (P.L. 1915 p. 185), should be enforced. This, of course, disposes of the subsidiary argument as to the right of the defendants to implead Green as a party. So far as Green's rights are concerned, this decision will not bind him.
I will advise an order striking out the answer and counter-claim.