WILLIAM J. MURPHY, PLAINTIFF IN ERROR, v. W. H. & F. W. CANE, INCORPORATED, DEFENDANT IN ERROR.

Submitted December 11, 1911—Decided March 5, 1912.

1. In an action founded upon the breach by defendant company of an alleged contract made between the plaintiff and the defendant for the doing of the plumbing work of a public building, for whose entire construction the defendant held the contract from the public authorities, the evidence examined and *held* sufficient to warrant a jury in finding that the president of the defendant company was authorized to represent it generally in the making of such contracts as that upon which the plaintiff relied, and therefore that the contract in question was within the scope of his agency.

2. When in the course of the business of a corporation an officer has been allowed in his official capacity to manage its affairs, his authority to represent the corporation may be inferred from the manner in which he has been permitted to manage its business.

3. Where a third party seeks to charge a corporation with a contract made by it through the agency of one of its officers, it is not incumbent on such third party to show that the previous course of business from which the agency is to be inferred was known to and relied upon by him.

4. A third party is entitled to hold the principal on a contract made by the agent in the name and behalf of the principal, even though the party does not at the time of the making of the contract know the particular source of the agent's authority.

5. Where there are no directors *de jure*, an agency for the corporation may be created in favor of third parties by the conduct of directors *de facto;* and where the functions normally pertaining to a board of directors are performed by the stockholders themselves, they by common consent dispensing with the election of directors, an agency for the company may result as if such action by a board of directors had intervened.

On error to the Supreme Court.

For the plaintiff in error, *Collins & Corbin.*

For the defendant in error, *Edwards & Smith.*

The opinion of the court was delivered by

PITNEY, CHANCELLOR. The judgment that is here under review is the result of the second trial of the action. Upon the first trial there was a verdict in favor of the plaintiff, which was set aside by the Supreme Court, on rule to show cause, for reasons expressed in an opinion delivered by Mr. Justice Parker, and reported in 51 *Vroom* 163. Upon the second trial this decision was deemed by the trial judge to be controlling, and he granted a nonsuit. This ruling, to which an exception was duly sealed, is now assigned for error.

The action is founded upon defendant's breach of an alleged contract made between the plaintiff (a plumbing contractor) and the defendant (a building construction company) for the doing of the plumbing work of a public school building for whose entire construction the defendant held the contract from the public authorities. According to the plaintiff's testimony, the contract on behalf of the defendant was made by Mr. William H. Cane, its president. The circumstances are stated in the opinion just referred to.

The ground of the decision of the Supreme Court was that the president of the company had no power *virtute officii* to award sub-contracts, and that there was nothing to show express authority conferred upon him to make the particular sub-contract, or contracts of the like nature, nor to show that by holding out the president as authorized to make such contracts the corporation had estopped itself from denying his authority.

At the second trial, by agreement of parties, the evidence taken at the first trial was read, and no other evidence was submitted except that the entire minutes of the defendant company from the time of its incorporation in the year 1904

until the making of the alleged contract in January, 1909, were introduced in evidence.

The judgment of nonsuit is sought to be supported upon several grounds. The only one that we deem worthy of discussion is the same that was sustained by the Supreme Court (but upon less complete evidence, as will appear below), viz., that the president of the company was not shown to have the authority to bind the defendant company without the assent of the board of directors.

The evidence does not clearly show under what statute the defendant was incorporated, but from the nature of its business we deem it a reasonable inference that it derived its corporate powers under the general "Act concerning corporations." *Pamph. L.* 1896, *p.* 277; 2 *Comp. Stat., p.* 1595. This act does not attempt to define the power and authority of the president about acting for the company in the transaction of its business, section 13 merely prescribing that every corporation organized under this act shall have a president, &c., but without saying what shall be the duties of the president. It would seem proper, therefore, that a company organized under this act should by its by-laws establish and define the authority of the president. But the defendant company had no by-laws, or at least the jury could reasonably so find from the entries in the minutes presently to be mentioned.

The present case, as we think, requires no discussion of the question, What powers pertain to the president of such a company merely by virtue of his office?—a question concerning which there is much confusion and contradiction among the authorities. See 4 *Thomp. Corp.* (*1st ed.*), §§ 4617, 4622; 7 *Id.*, §§ 8541, 8543; 14 *L. R. A.* 356, note to *Wait* v. *Nashua Armory Assoc.*, 66 *N. H.* 581; 10 *Cyc.* 903, 909; and the decisions cited by Mr. Justice Parker in 51 *Vroom* 165.

But we think the present record contains abundant evidence from which the jury might reasonably find that Mr. William H. Cane, the president of the company, was authorized to represent it generally in the making of such contracts as that upon which the plaintiff relies, and therefore that this con-

tract was within the scope of his agency. We do not find it necessary to determine whether the Supreme Court, in setting aside the verdict rendered at the first trial, took an erroneous view of the evidence that was before it. For the minutes of the company that were introduced in evidence upon the second trial presented the case in a very different aspect. From Mr. William H. Cane's own testimony it was to be gathered that the company was incorporated in 1904 to take over the business of a partnership firm that had for many years been conducted in the name of W. H. & F. W. Cane; that from its incorporation the company had undertaken and executed many large building contracts; and that he as president of the company signed the contracts and superintended the work that was carried on under them. It is true that he testified that the contracts were awarded by the "board of directors," consisting of W. H. Cane, the president; his father, F. W. Cane, the treasurer; and Mr. Wills, the secretary of the company. But he did not testify to any formal resolution adopted by the so-called "directors," it being admitted that no minutes of their meetings were kept. It was reasonable to infer that there were informal conferences rather than meetings, and that they resulted in advice rather than more formal action.

The "Full minutes of W. H. & F. W. Cane, Incorporated," as introduced in evidence upon the second trial, show merely five meetings of the stockholders, held respectively April 9th, 1904, April 30th, 1905, June 14th, 1906, November 2d, 1907, and November 28th, 1908.

At the 1904 meeting there were present F. W. Cane, W. H. Cane and James King. The business of electing officers was taken up, which resulted in the election of Mr. W. H. Cane as president and Mr. F. W. Cane as secretary and treasurer. They received the unanimous vote of five hundred shares of stock. Mr. King was appointed a committee to prepare a set of by-laws, rules and regulations for the governing of the company. The officers were requested to procure the necessary stock ledger, minute book, bond and check book, seal and other stationery. The officers were authorized to purchase a

certain plot of ground at a specified cost, and, in the absence of further business to be transacted, the meeting adjourned.

The minutes of the 1905 meeting show the same three persons present, that the minutes of the previous meeting were read and approved; the annual statement was read by the secretary and ordered placed on file; a dividend of thirty per cent. was ordered paid, and the secretary was instructed to have checks drawn for the respective amounts; the committee appointed to prepare by-laws reported progress; the officers of the company reported having purchased the necessary stock ledger, minute book, bond and check book, seal and other stationery required; and officers were elected for the ensuing year, viz., W. H. Cane as president and F. W. Cane as secretary and treasurer.

At the 1906 meeting it appears that the same three stockholders were present, and there followed in regular course the approval of the minutes, the reading of the annual statement, the declaration of a ten per cent. dividend, "the committee on by-laws reported progress;" it was resolved to increase the board of directors to five by the addition of Mr. Ernest Jacobs and Mr. Charles A. Will, and Mr. Will was appointed secretary of the company. Mr. F. W. Cane reported the purchase of a certain piece of property, and officers for the ensuing year were elected, viz., president, W. H. Cane; treasurer, F. W. Cane, secretary, C. A. Will; superintendent, E. Jacobs.

The meeting of 1907 followed the same routine, except as to the purchase of property; the dividend declared was six per cent., and as usual "the committee on by-laws reported progress." The same is true of the meeting of 1908, except that no dividend seems to have been declared.

From all this it seems to us that a jury might reasonably infer that this was a "close corporation," numbering at first three and afterwards only five stockholders, and that by common consent they dispensed with the adoption of any by-laws for the company and waived the election of directors, the stockholders themselves acting as *de facto* directors. That the stockholders knew the company was carrying on a successful business is to be inferred from the submission of annual state-

ments and the declaration of dividends. And because of the fact that the stockholders elected and re-elected Mr. W. H. Cane as president, and refrained from establishing by-laws for prescribing his powers and authority or for regulating the mode in which the business of the company should be conducted, it seems to us the more reasonable to infer from the entire course of business that the company intended to confer upon him such authority as he is shown to have customarily exercised.

In *Stokes* v. *New Jersey Pottery Co.*, 17 *Vroom* 237, 242, Mr. Justice Depue, speaking for the Supreme Court, said: "There are cases in which the powers of an officer of a corporation, and his authority to act for the company, are enlarged beyond those powers which are inherent in his office; but those are cases in which the agency of the officer has arisen from the assent of the directors, presumed from their consent and acquiescence in permitting the officer to assume the control and direction of the business of the company. *Taylor Corp.* 202, 236, 244; *Ang. & Ames Corp.*, §§ 299, 302. Thus, when, in the usual course of business of a corporation, an officer has been allowed in his official capacity to manage its affairs, his authority to represent the corporation may be implied from the manner in which he has been permitted by the directors to transact its business. *Martin* v. *Webb*, 110 *U. S.* 7. These are simply instances of the application of the principle that usual employment is evidence of the powers of an agent, and a responsibility will be laid upon the principal for the acts of his agent within the apparent authority so conferred upon the agent—a doctrine which has come to be applied to corporations in many respects as well as to individuals, and with the same qualifications and limitations."

This language was reiterated by the same distinguished judge in delivering the opinion of this court in *Fifth Ward Savings Bank* v. *First National Bank*, 19 *Vroom* 513, 517, and has since been treated as an authoritative statement of the law upon this subject.

It is not correct, we think, to confine the application of this doctrine to cases of strict estoppel. At least, where a third

party seeks to charge a corporation with a contract made by it through the agency of one of its officers, it is not incumbent on such third party to show that the previous course of business was known to and relied upon by him. As was correctly pointed out by Vice-Chancellor Emery in *Blake* v. *Domestic Manufacturing Co.,* 19 *Dick. Ch. Rep.* 493, 494, the principle of technical estoppel as between parties is not involved in such cases, and could not be for the reason that an estoppel of the principal toward the third person dealing with the agent must depend upon the representation made by the principal to the third party; a representation made by the principal to the agent would not, generally speaking, give rise to a technical estoppel.

Normally, an agency arises from some contract or other transaction or transactions that are between the principal and the agent, and not ordinarily known to outside parties, and a third party is entitled to hold the principal on a contract made by the agent in the name of the principal, even though the party does not at the time of the making of the contract know the particular source of the agent's authority. In cases of the class now before us, the third party, when litigation necessitates proof of the agency, may adduce evidence of the customary exercise by the alleged agent of the authority appropriate to such an agent under circumstances that give rise to the inference of knowledge and acquiescence on the part of the principal—not necessarily to show that the principal is estopped in favor of the third party to deny the agency, but rather to show that such agency was in fact created.

The language employed by Mr. Justice Depue was that the authority of the officer to represent the corporation may be implied (we would prefer to say *inferred*) "from the manner in which he has been permitted by the directors to transact its business." It is of course a necessary corollary that where there are no directors *de jure* the agency may be created in favor of third parties by the conduct of the directors *de facto,* and that where the functions normally pertaining to a board of directors are in the particular instance performed by the stockholders themselves, they by common consent dispensing

with the election of directors, the agency for the company may result as clearly as if action by a board of directors had intervened, for such directors would themselves be no more than agents for the body of stockholders.

For these reasons it seems to us that the trial judge, instead of granting a nonsuit, should have submitted to the jury the question whether, under all the evidence, it was to be inferred that Mr. William H. Cane had been clothed by the defendant company with authority to represent it in the making of such contracts as the contract alleged by the plaintiff as the ground of his action.

The judgment under review should be reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, VROOM, CONGDON, WHITE, TREACY, JJ.   16.