MAURICE J. ELFENBEIN, SAMUEL ELFENBEIN AND HIRAM ELFENBEIN, CO-PARTNERS, DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF MAURICE J. ELFENBEIN & COMPANY, PLAINTIFFS-RESPONDENTS, v. LUCKENBACH TERMINALS, INCORPORATED, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Submitted February 17, 1933—Decided April 27, 1933.

For the defendant-appellant, *Kelsey & Ludwig.*

For the plaintiffs-respondents, *Hiram Elfenbein* and *Stanley Cohen.*

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment entered upon the verdict of a jury after a trial at the Hudson County Circuit Court.

Plaintiffs are partners doing business as accountants and auditors in New York. Defendant is a New Jersey corporation doing business in this state and having an office in New York. Its capital stock consisted of twenty thousand shares of $100 par value stock issued and outstanding. On this stock it paid an annual franchise tax of $2,000.

Under date of November 24th, 1928, plaintiffs wrote the following letter (*Exhibit P-1*) to defendant:

"As a result of careful investigation we have discovered that your company has been making a needless expenditure of approximately $1,400 annually and that this amount may, in a purely legal manner, be eliminated from your annual expense.

"We will gladly submit our findings and point out exactly how this saving can be effected.

"There will be absolutely no obligation on your part unless our information or advice is made use of and a reduction in expense is actually effected, in which event, our fee shall be an amount equal to fifty per cent. of the first year's reduction.

"Upon advice from you we will be pleased to submit our data without obligation to you as stated above."

This letter was addressed and delivered to the New Jersey plant of defendant.

Paul Kuhne, a director and treasurer of the defendant since its organization in 1920, received the letter at the defendant's office and showed and gave it to Mr. Lukenbach, president of the corporation.

On December 5th, 1928, on the letterhead of Lukenbach Trap Rock Corporation, a company affiliated with the defendant, Kuhne wrote from the New York office of the defendant the following letter (*Exhibit P-2*) to the plaintiffs:

"With reference to your letter of November 24th, which was directed to our River Road plant, please advise us what you have in mind."

The letter was signed "P. Kuhne, Treasurer." This letter, he says, he was not authorized by the board of directors to write but that he wrote it of his own volition and in the same way that he answered many letters directed to the company that related to matters that he had charge of.

At the time he wrote the letter the president of the company was out of the office but he brought the letter to the president's attention.

On December 6th, 1928, plaintiffs sent a letter (*Exhibit P-3*) in reply to *Exhibit P-2,* directed to defendant at its New York office, "Attention of Mr. Kuhne, Treasurer," setting out in detail a plan by which the defendant could amend its certificate of incorporation by changing its $100 par stock to no-par stock, and thus reduce its tax on the same number of shares from $2,000 to $600. It also pointed out that a further reduction could be accomplished by reducing the number of shares outstanding, and that in order to make the reduction effective on the 1929 tax, the amendment would have to be made by December 31st, 1928.

Mr. Kuhne brought this letter also to the attention of the president, but couldn't say whether the president brought it to the attention of the board of directors. Kuhne did not do so.

On December 14th, one week after defendant received this letter (*Exhibit P-3*) from the plaintiffs, the defendant perfected the change to no par value on the basis of one hundred shares of par value of $100 each in exchange for one new share without par value and this reduced its tax from $2,000 paid in 1928, to $6.00 paid in 1929, a saving of $1,994, one-half of which, $997 was the amount of the judgment, exclusive of interest.

The plaintiffs were at a disadvantage in proving their case because of the necessity of calling as witnesses officers of the defendant corporation, who were not eager to aid plaintiffs' cause.

Mr. Stefferson, the secretary and general counsel of the defendant, who attended to the drawing up of the resolutions for the change of the stock, said that the proposal of plain-

tiffs had never been brought before the board of directors of defendant, that Mr. Lukenbach, the president, had control of the corporate change and he had discussed it with him, and that it had been pending "a long time" (he doesn't say whether "a long time" meant before or after the correspondence began between the plaintiffs and Mr. Kuhne), that he never saw *Exhibits P-1, P-2* or *P-3* until after this suit was brought and knew nothing of the plaintiffs' plan, either from the plaintiffs or from Mr. Kuhne, Luckenbach or anyone else—that he went to a trust company in New York and discussed the matter and simply followed the New Jersey statute.

The plaintiffs were more fortunate with Mr. Kuhne when called as a witness for the defendant, as the following questions and answers will demonstrate:

Question by Mr. Kelsey—"Did you, upon receipt of those letters, either from your office as treasurer, or by communication with any other officer of the corporation, utilize or make use of the information that was received?

The witness—My answer to that is that we did go through formalities and reduce the capital stock structure of the corporation and saved some money.

The court—Was it due to what you learned from the plaintiff in this case?

The witness—I believe I answered once before that was the incentive, that letter.

The court—That was the incentive; did you take their plan, or evolve one of your own?

The witness—I have nothing to do with that.

The court—Who evolved the plan?

The witness—The matter, as I explained before, was turned over to the president of the company, and the legal department."

At the conclusion of the plaintiffs' case a motion for non-suit was made on the following grounds:

(1) That the plaintiffs failed to show that there was any contract made between the parties.

(2) That the plaintiffs failed to prove any power in Kuhne to make any agreement, if one was made.

(3) That the alleged agreement was indefinite and does not show a meeting of the minds upon a common ground of mutual understanding; nor of the mutual intentions of the parties to the offer and acceptance.

(4) That the court alone had the power to construe the alleged contract; that it was not a jury question as the words contained therein are not ambiguous in any sense.

This motion was denied.

At the conclusion of the defendant's case a motion for the direction of a verdict in favor of defendant was made on the same grounds. This was also denied and the case went to the jury on a charge by the court to which no exceptions were taken.

There are sixteen grounds of appeal, the first of which is because the trial judge erred in refusing to grant the motion for a nonsuit, the second, that he erred in refusing to direct a verdict for the defendant.

Three of the grounds are directed against the admission in evidence of *Exhibits P-1, P-2* and *P-3*.

Two allege error in admitting into evidence the plaintiffs' interrogatories and replies thereto.

Seven allege error in permitting certain questions to be answered by the witness Kuhne over objection of defendant, and two are directed to the action of the court in the striking out of the third defense contained in defendant's answer.

It is first argued that it was error to refuse to nonsuit on the ground that there was no contract proved. Under this appellant argues that the contract was without consideration. Appellant relies upon the case of *Siemers* v. *Hauser,* 52 *N. J. L.* 125, wherein Hauser obtained a judgment against Siemers under a written agreement by which Siemers agreed to pay Hauser for purchasing lands in Hoboken and conveying them to him, a sum equal to ten per cent. of whatever reduction Hauser could obtain of city liens against the lands. The legal basis for obtaining a reduction had already been laid by the legislature and the municipal authorities, so it was held the contract was without consideration. The situation in the instant case is quite different. Here plaintiffs did not offer

to obtain a reduction, but merely to point out to defendant a method provided by law by which the change might be made, if defendant would pay for it. In the Hauser case the reduction would have come automatically. Here there would have been no saving had defendant not acted. We do not think there was a failure of consideration.

It is next argued that there was no contract because there was no meeting of the minds. Here it is contended that the letter of the treasurer did not constitute an acceptance of plaintiff's offer, but was merely in the nature of an inquiry seeking further information as to the nature of the offer.

When, however, in response to Kuhne's inquiry, the plaintiffs fully disclosed their plan, there was no protest on the part of defendant that it had not asked for the plan, no notice that defendant already knew and was considering the plan set forth in plaintiffs' letter of December 6th. On the contrary the proofs show that no answer of any kind was made by defendant to this communication but that within a week thereafter the defendant put this, or a similar plan in operation, and gained the benefits therefrom. In view of the conduct of the defendant subsequent to receiving this letter, and the testimony of Kuhne to the effect that the defendant did act upon the information received from their letter, we think a jury question was presented.

It is further contended that Kuhne had no authority to bind the corporation. "A corporation will not be bound by an act of an officer which he is not expressly authorized to perform and which is not usual as to his office, unless the corporation has held him out or allows him to appear as having authority, and the act is within the scope of his apparent authority." *Beach* v. *Palisade Realty and Amusement Co.,* 86 *N. J. L.* 238. A corporation may, however, ratify any act done without previous authority which it could have authorized, and such ratification will be implied from acquiescence or acceptance of benefits of such contract, it being essential to implied ratification that it and the acceptance of benefits be with knowledge of the fact. *Feist & Feist, Inc.,* v. *A. & A. Realty Co.,* 105 *Id.* 461, cases therein cited.

Kuhne was in charge of the defendant's office. He received and answered letters and he said that he never did anything that wasn't absolutely in order and authorized by the board of directors and he notified the president as to the letters he received from and wrote to the plaintiffs.

In view of the testimony in the case and in view of what occurred with respect to the change in the capital stock, we think there was a question of fact for the jury as to Kuhne's authority to bind the corporation.

It is argued that the contract relied upon presented a pure question of law for the court to deal with. We think this is not so. The very defense of defendant raised questions of fact, *i. e.,* lack of authority, &c.

The next ground of appeal is that there should have been a directed verdict. This was sought on the same grounds as the nonsuit, and what has been said above is applicable to the refusal to direct a verdict.

Grounds of appeal 3, 4 and 5 challenge the admission into evidence of the three letters, *Exhibits P-1, P-2* and *P-3* above mentioned. The contention is that the letters failed to con-constitute a contract as a matter of law. We are of the opinion that by their terms they did constitute a contract, and even if there were nothing upon which to base them when offered, as alleged by appellant, the foundation was later supplied.

Ground 6 alleges error in permitting a question to be asked plaintiffs' witness as to whether or not plaintiffs had billed defendant after learning that the change in capital structure had been made. We can see neither error nor harm in this.

Grounds 7 and 8 deal with the introduction in evidence of interrogatories propounded by plaintiffs and answered by defendant. No authority is offered for the argument that they were not admissible and the point seems to us to be entirely without merit.

Grounds of appeal 9, 10 and 11 attack the action of the court in permitting questions directed to Kuhne, the treasurer, as to the scope of his authority and the nature of his duties. Since one of the defenses was lack of authority of

Kuhne to bind the defendant, we think it material to inquire into what his duties were. In view of his answers, there could be no harm to defendant.

Grounds of appeal 12 and 13 question the propriety of the trial court in permitting the witness Kuhne to answer questions as to whether he called the president's attention to the plaintiffs' letter of December 6th (*Exhibit P-3*) and if he knew whether the president had brought said letter to the attention of the board of directors. We think these questions were proper for the purpose of ascertaining whether defendant had in fact knowledge of the defendant's plan and whether it had acted as it did because the plan was suggested by the plaintiffs.

Ground of appeal 14 complains that the judge erroneously asked the witness Kuhne on redirect examination to read a section of the by-laws of the defendant. No exception was taken to the court's ruling and the matter is not properly before us.

Grounds 15 and 16 have to do with the action of the court in striking out the third separate defense of the answer which was in effect that the conduct of plaintiffs in making the suggestion they did constituted the practice of law prohibited by law in New York where it was done. We do not think that this constituted the practice of law. We think it was merely an offer to disclose information which anyone might obtain, lawyer or layman, and did not contain advice of a legal nature.

We find no merit in any of the grounds of appeal and are of the opinion that the judgment of the Hudson County Circuit Court should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—DILL, J. 1.