BOWEN v. TRUST CO. OF NEW JERSEY et al.

No. 9425.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 4, 1947.

Decided Feb. 11, 1948.

Louis G. Morten, of Jersey City, for appellant.

John P. Nugent, of Jersey City, N. J. (Nugent & Rollenhagen, of Jersey City, N. J., on the brief), for Trust Co. of New Jersey.

John Milton, of Jersey City, N. J. (John L. Cecil, of Chicago, Ill., and Norris C. Bakke, Associate Gen. Counsel, of Washington, D. C., on the brief), for Federal Deposit Ins. Corporation.

Before BIGGS, GOODRICH and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellant, by his amended complaint, on which he went to trial, sued upon an alleged agreement, partly oral and partly in writing, which he asserted entitled him, among other things, to 5% commission on all rents received by West Bergen Trust Company (later merged with appellee, The Trust Company of New Jersey) from properties in which it was interested as owner or otherwise and covering a period from February 11, 1934 to June, 1939. The district judge sitting without a jury disallowed the claim.

On May 11, 1933, appellant was a vice president and the second largest stockholder of West Bergen Trust Company, a New Jersey bank. On that day by resolution appearing in the bank minutes he was "placed in charge of the Real Estate Department." The minutes further disclosed "Discussion was entered into as to the compensation to be paid Mr. Bowen for his services and it was decided that a survey of the duties and functions of this department should be made by Mr. Bowen and a report as what he would consider a fair compensation should be made to the Executive Committee." Bowen was present at that meeting and also at the meeting of the bank's executive committee on May 25, 1933, the minutes of which read:

"Discussion was entered into with reference to compensation to be paid to James Bowen, as Vice-President in charge of the Real Estate Department.

"On motion duly made, seconded and carried it was Resolved, That James Bowen be paid an annual salary of $2,400 payable in monthly installments of $200.00 each, for his services as Vice President in charge of the Real Estate Department, effective as of June, 1, 1933.

"On motion duly made, seconded and carried *the Secretary was instructed to define the scope and functions of the Real Estate Department and present same to the Committee at its next meeting."* (Emphasis ours.)

On May 28, 1933 (a Sunday) Bowen testified that he wrote a letter to the board of directors of the bank which is set out in the margin.[1] In this he refers to the

---

[1] "Referring to resolution adopted by the Executive Committee at its meeting of May 25, 1933, providing that I be paid a salary of $2400.00 for services as vice-president in charge of Real Estate Department and the resolution relative to the defining of the scope and function of the department, I agree that they are to be paid as follows:

"I am to have control of the Real Estate Department and report monthly upon real estate in which the bank is in-

last mentioned resolution of May 25, fixing his salary as vice president in charge of the real estate department and then says: "Relative to the defining of the scope and function of the department, I agree that they are to be as follows:", and then he goes on to outline certain activities in connection with the real estate department. He concludes the letter by saying that he is not a licensed broker but as soon as he procures such license "then I am to be paid commissions at the rate of 5% for the collection of rents in addition to the salary of $200.00 per month." Bowen testified that he followed that letter with a second letter dated June 11, 1933. This is also set out in a footnote.[2] In that second letter Bowen reiterated his assertion that he was to receive 5% commission on rent collections.

There is no record of receipt by the bank of either of the letters or any mention of them or their subject matter in the bank's minutes. The letter of May 28, 1933, was produced from the bank's files. In connection with this, counsel for F.D.I.C. called the court's attention to the fact that Bowen "as vice president of the bank was in a peculiarly advantageous position to have the letter appear in the files of the bank without calling it to anyone's attention." The letter of June 11, 1933, could not be found in the bank files. Receipt of the letters was denied on behalf of the bank. Bowen did not obtain his real estate broker's license until February 16, 1934. Bowen collected his $200 a month from the bank from June 1933 to April 1939. He functioned as head of the bank's real estate department during that period. He never attempted to collect any part of his alleged 5% rent commissions until at the time of or after the merger of the two banks. West Bergen Trust Company was merged with appellee, The Trust Company of New Jersey, on April 18, 1939. The complaint averred that at that time appellee F.D.I.C. by agreement with the two banks assumed certain of their liabilities including the present claim. Appellant filed his claim with F.D.I.C. some time after the merger of the banks. His original action in this matter was commenced February 11, 1942.

In deciding against appellant the trial court found as facts regarding both the letter of May 28, 1933, and that of June 11, 1933, that "Nothing appears in the minutes indicating receipt of this letter by the board of directors and the minutes disclose no action by the board thereon." The court found affirmatively as a matter of law that the bank's only responsibility to Bowen was his annual salary of $2400 a year. As to this there remained due him

---

terested; upon taxes, interest on mortgages, personally contact delinquent owners, check, appraise and report upon all applications for mortgage loans to the Board of Executive Committee; appraise and recommend amount of insurance to be carried on all properties and report upon companies in which policies are submitted, recommend repairs, alterations and submit estimate of cost and make general recommendation for the protection of investments of the bank in real estate.

"At the present time, I am not a licensed broker, but as soon as I have secured a real estate broker's license, then I am to be paid commissions at the rate of 5% for the collection of rents in additional to the salary of $200.00 per month."

[2] "Along the lines of our recent discussion I believe I should go on record as to what we have agreed on verbally.

"We have agreed that I am to receive $2400 per annum for my services as Vice President in charge of the real estate department, and that I am to manage all properties from which the bank receives any rents, whether the bank owns the property or whether the property is owned by some one else.

"These properties are to be managed through my office; I will have supervision of all maintenance, repairs, renting and collection of rents and I am to receive five per cent commission on all of these rents, whether the bank receives the rents through my office or whether the rents are paid direct to the bank by my direction.

"Where there are written leases with any tenants I am to be entitled to a five per cent commission on all rents that are paid or to be paid under each lease and every renewal of a rental by lease, provided the rents are paid.

"I consent to defer the payment of these commissions until I feel the bank can pay them but I am not to be prejudiced by waiting for my commissions and we have agreed that the statute of limitations shall not run against me."

salary from April 15, 1939 to June 1, 1939, amounting to $300 which Bowen was allowed. He was also awarded $408.10 for moneys expended by him in installing an oil burner in one of the bank's properties. There was a judgment in favor of F.D.I.C. on all counts of the complaint because "there was no proof showing any liability of" that corporation.

Appellant's main point on this appeal is that the bank acquiesced in and accepted the terms of the contract tendered by appellant in his letters of May 28, 1933 and June 11, 1933, with a knowledge of the facts.

There is but a tenuous connection at best between appellant's theory of his case as he presents it to us and as set out in his second amended complaint and tried by him below. The complaint alleged a service contract, Bowen to receive $2400, a year salary and "also in addition to said salary, commissions at the rate of 5% on all rents received by" the bank. The contract attempted to be proved in the district court consisted of the above referred to resolutions and letters. Regarding the alleged contract, appellant's counsel stated to the court: "Yes, yes, that's what we claim; that's what we claim; that it was all covered by the written agreement." The attorney made two later statements in the course of the trial, hinting at the ratification theory. These statements are much alike. In the second, speaking of Bowen, his attorney said, "He is asked to define the duties of his office and he comes back and he says 'these are the duties of the office which we have agreed upon, Mr. Thiess [the bank's secretary] and I as you directed.' Now they don't say anything; they sit idly by and submit to that statement; no question about it. They sit idly by and allow him to work under it for five years. Can they deny it now and say 'we never accepted it?'" Aside from the vital question of Bowen's alleged counter offer ever coming to the attention of the bank's board of directors, discussed infra, the above statement is not in accord with the facts presented by the appellant himself. By the first bank resolution of May 11, 1933, it had been decided that a survey of the duties and functions of the real estate department should be made by Bowen with a report from him to the executive committee as to what he would consider fair compensation. However, by the final resolution of the executive committee of May 25, 1933 which fixed Bowen's salary as vice president in charge of the real estate department, *it was the secretary and not Bowen who was instructed to define the scope and functions of the real estate department.* Nor is there any evidence that Theiss, the secretary, got together with Bowen at any time as to those things or, indeed, that Bowen ever so claimed.

Having in mind that there should be an end to this long drawn out litigation, under all the circumstances we accept appellant's contention that the doctrine of ratification is for our consideration. And we have no quarrel with the principles enunciated in Feist & Feist, Inc., v. A. & A. Realty Co., Ct. E. & A., 105 N.J.L. 461, 145 A. 478. There the plaintiff contracted in writing with the owners of an apartment house to act as managing agent. Under the contract plaintiff was entitled to 5% commission on rentals and leases. A month after the contract had been entered into, the owners advised plaintiff that it was to deal with a corporation which, the New Jersey court presumed, had become the new owner. For over four years thereafter plaintiff worked for the new corporation under such contract, but, upon breach of the commission section of that contract asserted by the plaintiff, the new owner denied being bound by it. The court on these particular facts held the new owner responsible, saying, 105 N.J.L. at page 464, 145 A. at page 479: "To obligate a corporation upon a contract, it must be proven that the contract was its act, either by corporate action, that of an authorized agent, or by adoption and ratification, and such ratification will be implied from acquiescence or the acceptance of the benefits of such contract. It *being essential to implied ratification that it and the acceptance of benefits be with knowledge of the facts.*" (Emphasis ours.)

And see Shaten v. American Nat. Bank of Camden, 109 N.J.Eq. 307, 157 A. 128. The fact that the corporation involved is

a bank probably does not remove it from the ratification rule. While bank contracts by a special New Jersey statute are required to be in a certain form (L.1899 c. 173, Section 19, N.J.S.A. 17:4-39), the New Jersey decisions approve ratification of any contract which the corporation could have concluded in authorized form. Elfenbein v. Luckenbach Terminals, Inc., Ct. E. & A., 111 N.J.L. 67, 72, 166 A. 91.

■ But, as stated in the Feist opinion, the implied ratification and acceptance of benefits must be with knowledge of the facts. And the district judge as clearly as he could, by finding that there is nothing in the minutes of the bank to show that the board of directors ever received the letters or in any way acted on them, has found in fact that the West Bergen Trust Company had no knowledge of appellant's alleged further proposition by which he says he was to receive 5% commission for rents collected on behalf of the bank. There was ample evidence to support that finding. The court followed this up by deciding the real trial issue presented to it, namely, the contention that Bowen had a written contract with the bank, spelled out of the resolutions and letters. The holding on that feature of the case was that the evidence was insufficient to render the successor bank (The Trust Company of New Jersey) liable for any more than the stated salary of $200 a month, since there was no formal meeting of the minds between the parties and no proper corporate action in accepting Bowen's offer. The court then found specifically that Bowen had been retained at $2400 a year as head of the real estate department of the bank and that he was owed a small balance for his work plus an admitted disbursement.

■ The district court's decision shows that it passed upon and disposed of whatever element of ratification and acceptance of benefits which might be said to have arisen at the trial. And those questions were dealt with by the court as specifically as could possibly be expected under the trial circumstances. Appellant's insistence that West Bergen Trust Company accepted the benefits of his collection of its rents from 1933 to 1939 without paying him the agreed compensation for that service is singularly unconvincing. On the contrary the evidence, virtually all of it from the appellant, indicates strongly that Bowen functioned during those years as head of the real estate department in accordance with the bank resolutions of May 11 and May 25, 1933, for which he was paid $2400 a year and further that as part of his job he attended to whatever rent collection matters the bank had during that period. The bank was small, it was in such financial distress apparently that in 1939 it disappeared in the merger with The Trust Company of New Jersey. All of this is persuasive in aid of the district court's conclusion that the yearly salary was the total compensation fixed.

■ Appellant's claim against appellee, Federal Deposit Insurance Corporation is in the alternative and as the case was actually tried necessarily falls with the action against the bank. Independently of this, the lower court found as a fact that there was no proof showing any liability of the defendant F.D.I.C. and concluded as a matter of law that judgment should be entered for said defendant on all counts. Our search of the record shows this course to have been justified. Appellant in his brief concedes that the only proofs in the suit applying to this defendant are two requests for admissions on behalf of appellant that the latter paid certain bank rents to F.D. I.C. on June 8, 1938 and June 13, 1939. The admissions stated that the F.D.I.C. records show credits approximately in the amounts claimed to have been paid *"but contained no explanation of the source of the monies and method of payment."* (Emphasis ours.) These requests and admissions were not introduced into evidence. Even if they had been they would have not established any liability of F.D.I.C. to appellant.

■ Lastly, appellant asserts that his term of office expired January 9, 1940, and that he should have been paid until that date. His thought on this is that he was prepared to prove that the annual meeting of the bank was held the second Monday in January of each year; that this term as vice president began at the annual meeting

in each year as he was elected. He contends that it was as vice president and not in his private capacity that he was placed in charge of the real estate department. The district court found that appellant's services as vice president in charge of the bank's real estate department at an annual salary of $2400 began, in accordance with the bank resolution of May 25, 1933, on June 1, 1933, and that it ran from year to year, expiring on June 1, 1939. Appellant had not been paid for the period from April 15, 1939 to June 1, 1939. The court decided that he was entitled to his salary amounting to $300 for that time. The record with particular reference to the two bank resolutions fully bears out the findings of the court on this branch of the litigation.

The judgment of the district court will be affirmed.