TITUS & SCUDDER v. THE CAIRO AND FULTON RAILROAD COMPANY.

1. An agreement to engraft new terms upon an existing contract not binding, if without consideration.
2. The authority of G. to sell bonds of the company will not be inferred from his position as director of the company, nor from the fact that the president of the company gave him a power of attorney to sell. The authority of the president to execute such power of attorney must be shown.

On rule to show cause.

Argued at February Term, 1874, before BEASLEY, Chief Justice, and Justices SCUDDER, VAN SYCKEL and WOODHULL.

For the plaintiffs, *Jos. C. Potts* and *C. Parker.*

For the defendants, *Williamson.*

The opinion of the court was delivered by

VAN SYCKEL, J.    In the fall of 1867 the plaintiffs agreed to purchase of Dr. Guthrie, the general financial agent of the Cairo and Fulton Railroad Company, twenty-five bonds of the said company, of the par value of $1000 each, for the sum of $5000.    $1000 of the purchase money was paid by the plaintiffs to Dr. Guthrie, at or about the time of the negotiation of the contract, and the balance was paid during the spring of 1868.    At the time the bargain was concluded the bonds were not delivered to the plaintiffs, but subsequently and shortly after the date thereof the following acceptances were sent by mail to the plaintiffs, either by Dr. Guthrie, or by General Brayman, who was president of the company :

M. BRAYMAN, ESQ.,
    *President of the Cairo and Fulton R. R. Co., of Arkansas :*
    SIR—Pursuant to the contract between Jos. C. Potts and myself, dated the 20th day of June, 1867, and approved by

Titus & Scudder v. Cairo and Fulton R. R. Co.

you at the same date, please deliver to the order of B. W. Titus, out of the first issue of the bonds of the Cairo and Fulton Railroad Company, of Arkansas, hereafter to be made under said contract and coming to me, fifteen bonds (15) of $1000 each, and this shall be your voucher for the same, and oblige               Yours,

C. B. GUTHRIE.

New York, April 16th, 1868.

Endorsed as follows:

SPRINGFIELD, ILL., April 14th, 1868.

Accepted.

M. BRAYMAN,
*President Cairo and Fulton R. R. Co.*


NEW YORK, June 1st, 1868.

M. BRAYMAN, ESQ.,
*President Cairo and Fulton R. R. of Arkansas:*

SIR—Pursuant to the contract between J. C. Potts and myself, dated the 20th of June, 1867, and approved by you June 24th, 1867, please deliver to the order of B. W. Titus, out of the first issue of bonds of the Cairo and Fulton Railroad Company, of Arkansas, hereafter to be made under said contract, and coming to me, (10) ten bonds of $1000 each, and this shall be your receipt for the same, and oblige,

Yours, &c.,

C. B. GUTHRIE.

Endorsed as follows:


Accepted. Payable when bonds are issuable upon the contract within referred to.

M. BRAYMAN,
*President and Financial Agent.*


The plaintiffs demanded the bonds repeatedly of the company, and, failing to receive them, brought this suit to recover damages for their non-delivery. The case was tried before

the Hudson Circuit, by the assent of parties, without a jury, and the damages of the plaintiffs assessed at the sum of $17,750. On the trial of the cause the contract between Potts and Guthrie was not offered in evidence, nor was there any evidence to show that, by the terms of that contract, any bonds were issuable at the time this action was commenced.

The defendants insist, in the first place, that the two drafts and acceptances contain the agreement between the parties, which cannot be contradicted by parol, and that in the entire absence of proof to show a right on the part of the plaintiffs to the bonds under the written contract, no recovery can be had. These acceptances unquestionably make the delivery of the securities depend upon a contingency which is not shown to have happened, and must, if the case rests upon them, defeat the action, provided the Potts contract was not rescinded. But the premises from which this result flows, I think, are not well founded.

Dr. Guthrie and B. W. Titus were the only witnesses sworn in the case, and they both testify that the engagement between Dr. Guthrie and the plaintiffs was a general one ; that it had no connection with the contract between Potts and Guthrie ; that it was an absolute undertaking to deliver within a reasonable time, twenty-five bonds in consideration of the sum of $5000, subject to no condition or uncertainty whatever. Conceding the authority of Dr. Guthrie to sell the bonds on behalf of the company, the parol agreement was complete, and fully defined the rights and obligations of the parties to it. After the purchase money had been paid, Dr. Guthrie, without the knowledge or suggestion of the plaintiffs, drew these drafts and sent them to General Brayman, who endorsed his acceptance and forwarded them by mail to the plaintiffs. The drafts as accepted, engrafted upon the original contracts new terms by which the obligation of the defendants to perform their part of the bargain which was, before that, absolute and unconditional, is made to depend upon the performance of a contract between other parties over

which the plaintiffs had no control nor even a knowledge of its contents, so far as appeared in the cause.

The drawing of the draft and the acceptance were the acts of one party only to the agreement; and even if the assent of the plaintiffs will be implied from the fact that they received the drafts by mail and retained them without signifying their dissent, which may well be doubted, its effect would be to rescind a valid subsisting contract and substitute in its place an entirely new and different one. No consideration being shown for such new undertaking, it will not be binding upon the plaintiffs, and they may recover on the original contract.

Admitting, however, the validity of the written contract, the same result must be reached.

This was an agreement for the delivery of currency bonds. It appears that the company subsequently determined not to issue any currency bonds, but to put upon the market gold bonds in their place; and in the winter of 1869, Dr. Guthrie and General Brayman agreed with the plaintiffs to give them gold bonds instead of the currency bonds. The Potts contract, which was in force at the date of the acceptances, was afterwards abrogated, the time of its abrogation not affirmatively appearing. The stipulation to substitute the gold bonds was unconditional, and it is fair to presume, either that the bonds were then deliverable according to the contract with Potts, if it was then in force, or that said contract had been rescinded by mutual consent of the parties to it. If the company, without the concurrence of the plaintiffs, consented to the abrogation of the Potts contract, they incurred a responsibility to the plaintiffs which would support a promise to give the gold bonds.

In further defence to this suit, it is denied that Dr. Guthrie had authority from the company to sell these bonds. It is true that the bonds were negotiated at a very unusual discount, having been taken by the plaintiffs at twenty per cent. of their par value.

There is no pretence in the case that there was any fraud

or collusion between the plaintiffs and the agent, and if the sale was the act of the company, it cannot be disturbed. It is proper to say that the road was not then built, the company was much embarrassed in its finances, and its future very uncertain.

The authority of Dr. Guthrie cannot be inferred from his position as director of the company, nor from the fact that General Brayman, as president, by an appointment under his hand dated October 17th, 1866, constituted Dr. Guthrie the general financial agent of the company for the city of New York, with power to secure stock subscriptions and receipt for payments; to negotiate loans; to arrange contracts for construction and equipment; to incur and adjust expenses, and in general, to take care of the interests and affairs of this company in the city of New York. Power in the president to make such appointment must be shown.

In the absence of anything in the act of incorporation bestowing special power upon the president, he has from his mere official station, no more control over the corporate property and funds, than any other director. The affairs of corporate bodies are within the exclusive control of their boards of directors, from whom authority to dispose of their assets must be derived.

The act of a president or other officer, unless it is shown to pertain to his official duty, or to be within the scope of his employment, cannot be regarded as the act of the corporation, and is not binding upon it.

If any authority is necessary upon a rule of law so well settled, it may be found by reference to *Angell & Ames on Corporations*, §§ 297, 298 and 299.

The authority requisite to charge the company, must therefore be derived from the board of directors, and in this case, that is sufficiently shown.

Dr. Guthrie testifies that he had a power of attorney, similar to the one executed to him by the president, entered upon the books of the company and forwarded to him by the secretary; and that by a resolution of the board, General Bray-

man had general charge of all its affairs in connection with himself or separate from him, if he chose to act. Dr. Guthrie had acted as financial agent of the company for three or four years prior to the transaction with plaintiffs, and its management was principally entrusted to himself and the president. In addition to this, the money received from the plaintiffs, was appropriated to the purposes of the company. In my opinion the rule to show cause should be discharged.

The CHIEF JUSTICE and Justices WOODHULL and SCUDDER concurred.