WILLIAM B. HAINES' · ADMINISTRATOR, PLAINTIFF IN
ERROR, v. GEORGE WATTS' ADMINISTRATOR, DEFEND-
ANT IN ERROR.

1. In an action of assumpsit, in which the statute of limitations had been
pleaded, the plaintiff under his replication produced testimony compe-
tent to prove that payments within six years had been made on
account of the debt in controversy, as part of a system of partial pay-
ments begun twenty years before, by which the defendant had under-
taken to pay off the entire debt, and for this purpose introduced
written and oral declarations of the debtor that had accompanied the
said payments at the inception of the undertaking and during its con-
tinuance. *Held,* that such testimony was competent, and that the
plaintiff was not confined to the proof of such matters only as had
happened within six years.

2. Payments made to a creditor's widow, pending administration upon
his estate, will, if ratified by the administrator, take the debt out of the
statute of limitations, upon proof that they were made as part pay-
ments upon the debt in controversy.

On error to the Essex Circuit.

For the plaintiff in error, *H. W. Hayes.*

For the defendant in error, *F. W. Stevens.*

The opinion of the court was delivered by

GARRISON, J. The question in this case is, whether the
debt sued upon was barred by the statute of limitations.

At the trial, the plaintiff, without objection, introduced
testimony competent to prove the following state of facts:

In 1863 George Watts, the defendant's intestate, was in
partnership with his brother William, under the firm name
of George Watts, and owed, as a partnership obligation, to
William T. Haines, the plaintiff's intestate, a liquidated debt
of large amount. In the same year Haines removed with his
family to Canada, where he remained until 1868. During
these years Haines received, at stated intervals, from the

Wattses, drafts for sums of money, accompanied by letters, many of which have been preserved and were offered and admitted in evidence. In 1868 Haines returned to Newark, and from this time forth continued to receive from the Wattses sums of money, the payments of which assumed a marked regularity, both as to time.and .amount, namely, $20 per month. In addition to this, Haines acted as night watchman for the Wattses, and received $12 per week extra. These payments continued down to the death of Haines, in 1875. After Haines' death the Wattses paid to his widow the sum of $10 per week, which was sent to her regularly, once in each week, by the cashier of the Wattses' concern, sealed in an envelope bearing her name and the amount. These payments to the widow continued down to the death of William Watts, in 1883. Within six years from the date of the last payment so made, this action was brought against the administrator of George Watts, who had survived his brother William. During the period covered by this transaction, many of the payments were accompanied by statements and declarations, made by both partners, tending to show that they were payments on account of a larger indebtedness. Especially was this true during the earlier part of the time. Later, when the system of payments had continued for many years with regularity, little or nothing was said at the time of payments concerning their object. The amount thus paid was over $9,000, and the period over which the payments extended was nearly twenty years. In this condition of the proofs the plaintiff was non-suited, upon the ground that the payments made within the six years next before suit brought had not been shown to be upon account of the debt in controversy. The view of the plaintiff's case held by the trial court, and the principle of law deemed applicable to such a state of facts, sufficiently appear in the following quotation from the remarks of the Circuit judge at.the time the non-suit was granted: "The evidence," he says, in reviewing the plaintiff's · case, "shows that in July, 1863,. Haines· went to Canada, and remained there until 1868. During the time he·

remained in Canada moneys were remitted by the Wattses to Canada to him for his benefit. Those remittances were of a character that would seem to be in the nature of a payment on account of some debt. The proof, also, is, that letters were written by the Wattses to Haines during that time, which would tend to show that those payments were made possibly on the account now in controversy. It is not a matter of any importance to consider that class of testimony, because this suit was begun in 1889, and the six years, which is the period prescribed by the statute of limitations, would have expired in 1883. The contention in this case is, and on that it must rest, that after the 1st of January, 1883 (which would be six years before the commencement of the suit), such a payment had been made on account of this debt as would take the case out of the statute of limitations."

The general principle of law to be deduced from this language is, that a plaintiff, whose claim has been met by the statute of limitations, and who relies upon a new promise, evidenced by part payment within six years, must confine his proofs to such matters only as happened within those six years, and may not, in order to show the character and purpose of such payments, introduce in evidence any proof of a continuous transaction which antedates the running of the statute; in fine, that the statute is not only a bar to the old cause of action, but is also a bar to the evidence by which the new one may be proved.

In the case before us the proposition of the plaintiff, stated generally, was, that in 1863 there had been a liquidation of the debt due him, and an undertaking by the debtor looking toward the gradual extinguishment of the entire debt; that this undertaking had been acted upon by both parties, and that it was evinced by numerous letters from the defendant accompanying part payments, and had been manifested by its continuous performance for almost twenty years, and until nearly $10,000 had been paid upon the original debt. The application to this state of facts of the principle of law adverted to, is to deny to the plaintiff the right to show the true

nature of payments made within the statutory period, by any proof tending to show that they formed part of a system of payments, the character of which was settled at its inception, and can still be shown by the conduct of the parties, and by the declarations of the debtor himself, unless such payments, and the declarations which accompanied them, fell, also, within the six years covered by the statute. In this we think there was error. There is nothing in the statute of limitations to alter the ordinary rules of evidence, or to modify their operation, even within the field covered by the statute. If there were, it would not extend to part payments, or to their effects, which are, by the express terms of the statute, excluded from its operation. Now, at common law, a promise which took a case out of the statute of limitations might be either an express one, or it might be inferred from a payment made on account of the debt, or in part extinguishment of it. What the plaintiff in the present case had to prove was the issue tendered by his replication, namely, that the defendant's intestate, within six years next before suit, had promised and undertaken, as alleged in the declaration. To prove this promise, plaintiff showed payments made within and by the ordinary rules of proof sought to connect it with the transaction of which it formed a part, and from which its character and purpose might appear. Under these circumstances, we think it was for the jury to say whether a payment had been made within the statutory period; whether it was made upon account of the debt in suit; whether it was part of a transaction, so connected with the liquidation of the original debt, and the undertaking for its extinguishment, as to constitute a continuous acknowlegement of the debt and a promise to discharge it.

Nor is it perceived that there is in such a rule any hardship to the debtor who is thereby confronted not with the mere words of an adversary, but with his own contemporaneous conduct; not asked to contradict what it is said that he promised to do, but simply to explain what he himself did and admitted he was doing. Such testimony stands upon

much the same ground as oral declarations accompanying a payment by which its purpose and object may be ascertained, even though the declarations themselves, standing alone, are not competent proofs under the statute, as was the case in *Romaine* v. *Corliss*, 18 *Vroom* 108, but with this difference, that the conduct of a debtor is a safer guide to his intentions than his creditor's memory of what his debtor promised him. For, as was observed by Tindal, C. J., in *Wyatt* v. *Hodson*, 8 *Bing.* 309, "a person may part with his words rashly, but not so with his money."

In the present case the entire transaction between the parties, from the liquidation of the debt to the last payment made upon account of it, was before the court by testimony not only competent to prove it, but which, unexplained by the defendant, was certainly not lacking in persuasive qualities. Under these circumstances the case should, we think, have gone to the jury under proper instructions.

At the trial, and upon the argument, it was urged that the debt in question, if owing at all, was not recoverable by the plaintiff as the representative of Haines, because it had been in the lifetime of the plaintiff's intestate passed by general assignment to one Flintoft. The assignment in question was for "my share of all sums of money, accounts and demands due and owing to Flintoft & Haines on our books of account." Whether, at the time of this assignment, the debt in question fell within this description, or whether it was a personal debt due Haines, was, under the testimony, a matter of fact, resting for its determination not upon the construction of the written document but upon other and oral testimony as to the conduct and declarations of Haines and of Flintoft in respect to the money loaned by him to the Wattses. In passing upon this objection it may be well to remark that the assignment of this demand would not have vested in Flintoft any right to bring this suit in his own name. The action must, in any event, have been brought in the name of the person by whom the money was originally loaned, which, under the testimony, was the present plaintiff's intestate. So that the legal parties

were before the court. If the protection of the defendant, or the intervention of the equitable owner of the debt, requires the marking of the judgment, the matter is within the control of the court.

It was also said that the payments and accompanying declarations made by William Watts could not be used to show a new promise by George. The firm was George Watts, composed of George and his brother William. William died in 1863. So that George, who died shortly after, was the surviving partner. Under the view that we take of the transaction it was a question of fact whether both partners had not, by continuous participation in the extinguishment of the demand against them, recognized and admitted the debt sued upon.

Finally, it was urged that the payments made within six years were all made to the widow of Haines, and hence could not, under any circumstances, toll the bar of the statute, because not made to the plaintiff, his intestate, or his agent, or, to quote the language of the learned justice before whom the case was tried: "The payment was not made to a person to whom a payment being made it would have operated as a satisfaction of itself *pro tanto* of the debt that is now in controversy." Because of the opinion thus expressed, and in view of the re-trial of this issue, we deem it proper to dispose also of this objection. There is, it is true, a line of cases which holds that payments, even to a stranger, if made for the purpose of extinguishing the debt in controversy, will take the case out of the statute of limitations, even if such payment does not in law have the effect of a *pro tanto* extinguishment of the debt. *Clark* v. *Hooper*, 10 *Bing.* 480; *Megginson* v. *Harper*, 2 *Cromp. & M.* 320; *Bodger* v. *Arch*, 10 *Exch.* 333, and cases cited in *Hare's Notes* (1855); *Watkins* v. *Stevens*, 4 *Barb.* 168, and cases cited, *p.* 179. These decisions proceed upon the ground that the mental attitude of a debtor in respect to his debt being the substance of inquiry, it may be shown by his conduct whenever the latter

is significant, in respect to what he intended by it, without regard to what it actually accomplished in law.

The present case does not, however, call for a decision as to the effect of payments made to a stranger. The wife of plaintiff's intestate was one of the persons entitled to an administration, and to a participation in the distribution of his personal property. The payments made to her have been accepted by the administrator, and appear by this record to have had the effect of a *pro tanto* extinguishment of the larger debt. The title of the administrator relates back to the death of the intestate, for the purpose of supporting the rights of the intestate, and of ratifying acts for the benefit of his estate. When, therefore, it appears that a payment competent to show the debtor's recognition of his debt has, before the granting of letters, been made to a widow, or any of the next of kin, and has been ratified by the administrator when appointed, it does not lie in the debtor's mouth to say that his payment shall not have the effect he intended it to have. It stands as against him who made it as a *pro tanto* payment upon the debt it was intended to reduce. *Hubbards' Administrator* v. *Clarke* (*N. J.*), 7 *Atl. Rep.* 26, and *Croman* v. *Stahl*, 117 *Penna. St.* 91, are illustrations of the practical application of this rule.

This disposes of the several grounds upon which the nonsuit was directed. The judgment of the court below must be set aside, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, KNAPP, MAGIE, REED, VAN SYCKEL, BROWN, CLEMENT, SMITH. 11.