HANNAH EMSON WILBUR

v.

REUBEN WIN et al.

[Submitted April 30th, 1918.   Decided May 3d, 1918.]

1. In a suit to foreclose, a letter written by the mortgagor to the complainant, asking her to give him credit on an account consisting of principal and interest due on mortgages and a balance of a store account—*Held*, an acknowledgment of the existence of mortgage debts, so that the presumption of payment would not prevail, although more than twenty years had elapsed without cash payment on principal or interest.

2. In an account rendered interest should not have been charged upon the principal from the date of execution of the mortgages to the date of settlement where payments on account of the principal had been made, and no interest on such payments credited.

3. Where the mortgagor at his first opportunity protested against the correctness of the account, and the account was never corrected, the mortgagor's silence would not amount to acquiescence, so that it could be treated as an account stated.

4. An account stated rests upon mutual agreement of the parties as to its correctness. It may be established by formal consent, or by circumstances from which assent may be implied.

5. An account rendered may develop into an account stated by acquiescence, as by a failure to object to its items within a reasonable time, and whether there was such acquiescence is usually a mixed question of law and fact.

6. An account stated may be avoided for fraud or mistake.

On bill, &c.

*Mr. Aaron V. Dawes,* for the complainant.

*Mr. David O. Watkins,* for the defendants.

BACKES, V. C.

This bill is filed to foreclose two mortgages made by Jacob Win to Christian D. Emson, one dated May 23d, 1883, for $3,-

000, the other July 9th, 1884, for $1,000. Christian D. Emson bequeathed them to his son Ephraim P. Emson, who in turn bequeathed them to his daughter, the complainant. Win, the mortgagor, is deceased, and his children, his heirs-at-law, are the defendants. They set up that the mortgages were paid more than twenty years before the filing of the bill (March 14th, 1917) and that there has been no acknowledgment of their existence since, by payment on account of either principal or interest. On bringing the cause on for hearing, counsel took a reference to a master to ascertain the amount due, if anything, and he has reported that there is due to the complainant, on account of the principal, $1,122.15, an amount alleged to have been stated between the mortgagor and Ephraim P. Emson on March 24th, 1896 (less a deduction of $73.50 agreed upon), with interest from that time, a total of $2,424.30. To the report exceptions were filed, and it is agreed that in examining the exceptions the depositions taken before the master may be used in disposing of the defence of payment presumed from the lapse of time. It is an established fact that there was no cash payment on account of either principal or interest after 1896. Ephraim P. Emson died shortly after an account alleged to have been stated was rendered, and the failure of the complainant to take legal action to enforce the mortgages within twenty years is unexplained, and were it not for a letter written by the mortgagor to the complainant, in 1899, in which he asked her to give him credit on the account for $61, for items which he claimed should have been included in the account, and for a load of manure furnished to the complainant on March 17th, 1897, three days within the twenty years of the filing of the bill, the case would be controlled by *Blue* v. *Everett, 55 N. J. Eq. 329; affirmed, 56 N. J. Eq. 455,* and the bill would have to be dismissed. The account was made up of the principal and interest due on the mortgages and the balance of a store account (Emson was a merchant), and while it is debatable whether, by the letter requesting the credit, the mortgagor referred to the mortgage account or the merchandise account, it appears that there was something due to the complainant on one or the other, or both, at the time it was written, and the fair inference is that the mortgagor had in mind the

combined account which included the mortgages, and I conclude that he thereby acknowledged the existence of the mortgage debts. However, the defendants are disposed to pay what is justly due, and their principal argument was devoted to pressing the exceptions to the amount found due.

In March of 1896, Emson rendered to the mortgagor a statement of their dealings, which, for a better understanding, I have rearranged, leaving the items intact, and as rearranged, it reads:

*Dr.*

| | | | |
|---|---|---|---|
| Mortgage May 23d, 1883........... | $3,000 00 | | |
| Interest to March, 1896........... | 2,310 00 | | |
| | $5,310 00 | | |
| Cash Cr. interest paid........... | 1,560 00 | | |
| | | $3,750 00 | |
| Mortgage July 9th, 1884........... | $1,000 00 | | |
| Interest to March, 1896........... | 700 00 | | |
| | | 1,700 00 | |
| Book account .................. | | 1,292 34 | |
| | | $6,742 34 | |

*Cr.*

| | | | |
|---|---|---|---|
| (April 24th, 1892), cash, J. Win... | $400 00 | | |
| September, 1891, by Jack Davis.... | 87 50 | | |
| (August 24th, 1892), Pennington ins. .......................... | 2,050 00 | | |
| Three small show-cases ........... | 15 00 | | |
| 1894, one large Pros. Pettu......... | 30 00 | | |
| (February 16th, 1894), insurance check ........................ | 1,395 45 | | |
| (March 8th, 1895), Manchester.... | 430 00 | | |
| (April 15th, 1895), Mt. Holly..... | 1,222 24 | | |
| | | 5,620 19 | |
| Amount due .............. | | $1,122 15 | |

The dates in parentheses do not appear in the statement; they were furnished by the complainant from her father's books. In 1891 the buildings on the mortgaged premises were destroyed by fire, and the items represent the insurance collected by the mortgagee. It will be observed that interest was calculated upon the principal of the mortgages from the date of their execution to the date of the settlement, whereas, it is ob-

vious, that the interest should have been calculated upon the balances due from time to time, as payments on account of the principal were made or the accountant should have surcharged himself with interest upon these respective amounts. Mr. Emson, having charged interest on his mortgages, should have allowed interest on the sums he received in liquidation of the debts. This is only just and should be corrected.

I have calculated the interest from the dates of the payment of the insurance money to the date of the settlement, March 24th, 1896, and if the method upon which it is worked out does harm to either party, counsel may direct my attention upon motion for the final decree.

| | | |
|---|---:|---:|
| Balance as per statement of March 24th, 1896 .............................. | | $1,122 15 |
| Interest— | | |
| J. Win, $400, April 24th, 1892, 3 yrs., 11 mos. ............................. | $94 00 | |
| Pennington insurance, $2,050, August 24th, 1892, 3 yrs., 7 mos.................... | 440 75 | |
| Insurance check, $1,395.45, February 16th, 1894, 2 yrs., 1 mo., 8 days............ | 176 27 | |
| Manchester, $420, March 8th, 1895, 1 yr., 16 days ............................ | 26 28 | |
| Mt. Holly, $1,222.24, April 15th, 1895, 11 mos., 9 days ........................ | 68 98 | |
| Additional credit agreed to by complainant, | 73 50 | |
| | | 879 78 |
| | | $242 37 |
| Interest to be added— | | |
| On $824.28, from April 18th, 1891, to March 24th, 1896, 4 yrs., 11 mos., 6 days (hereafter explained) ................................. | | 243 95 |
| Leaving amount due March 24th, 1896............ | | $486 32 |
| Interest on this sum from March 24th, 1896, to the date of the master's report, February 5th, 1918, 21 yrs., 10 mos., 12 days..................... | | 624 89 |
| Amount due complainant ................. | | $1,111 21 |

The item of $243.95 is interest on the balance struck April 18th, 1891, on the book account, $1,292.34. It is a proper charge in the general adjustment of the interest. Interest on the running account between the parties is not allowed.

The master arrived at his result by treating the statement rendered by Emson to the mortgagor as an account stated and by adopting it as conclusive proof of the amount due. I fear that he did not give due weight to the evidence in holding that it was an account stated and he was clearly in error in the force he gave to it as proof, assuming it to have been an account stated. An account stated rests upon the mutual agreement of the parties as to its correctness and may be established by proof of formal assent, or of circumstances from which assent may be implied. An account *rendered* may develop into an account *stated* by acquiescence, as by a failure to object to its items within a reasonable time, and whether there was such acquiescence is usually a mixed question of law and fact. Here there is no proof of an expressed assent, and the question is, Is it to be implied from the circumstances? The principals are both dead. Mr. Emson died within forty days after he prepared the account, and how and under what circumstances a copy came to the hands of the mortgagor, and whether he made objections, does not appear. The complainant, a young and inexperienced woman, took charge of her father's vast estate, as executrix, and the first effort she made to collect the account, and so far as is shown that any mention was made of it by either party, was in 1899. The complainant says this occurred at her home at Colliers Mills, while the defendants are as emphatic in their assertions that the meeting occurred in Philadelphia. However, at his earliest opportunity, the mortgagor insisted upon additional credit on the account of $61, already referred to, and at that time disputed the interest charges on the mortgages and offered to settle for $500, which was slightly over the amount then due. This we have from the lips of the complainant. Two of the defendants, who said that the occurrence took place at their father's home in Philadelphia, also state that he protested against the overcharge of interest and pointed out the error in the account to the complainant. Thereafter numerous efforts were made by both sides to reach a just settlement, all of which came to naught. Why the complainant delayed so long before bringing her suit is, as I have said, unexplained, and leads one to suspect that she had but slight faith in her claim. Now, it seems to me, that the mort-

gagor's silence of three years and more did not speak assent, and that mere lapse of time, under the circumstances, is frail timber upon which to rest an inference of acquiescence in the correctness of the account. Such an inference is met by an equally reasonable one that after the death of Mr. Emson, and with the consequent change of claimants, the mortgagor, demurring but not contending, abided the time when demand for payment should be made upon him.

The rule is one of evidence and not of liability, and even if the account rendered be entertained as an account stated, the defendants would not be precluded from avoiding it on the grounds of fraud or mistake. "An account stated or settled is a mere admission that the account is correct. It is not an estoppel. The account is still open to impeachment for mistakes or errors. Its effect is to establish *prima facie* the accuracy of the items, without other proof." *Lockwood* v. *Thorne, 18 N. Y. 285; Eames Vacuum Brake Co.* v. *Prosser, 157 N. Y. 289; Spellman* v. *Muehlfeld, 166 N. Y. 245; Brown* v. *Vandyke, 8 N. J. Eq. 795.*

The exceptions will be sustained to the extent indicated, and the master's report will be modified accordingly. The complainant may take a decree for the amount herein found to be due.