Brandeis, Ancil. Admr., Appellant, *v.* Charter Mutual Benefit Association, Appellant.

Argued March 23, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Horace M. Schell* and *Philip S. Polis,* for plaintiff.

*Thomas A. Galbally,* with him *John J. Sullivan,* for defendant.

OPINION BY HIRT, J., July 23, 1948:

On the meagre record before us in the prior appeal we ordered a new trial to give plaintiff the benefit of all available evidence relevant to the cause of action alleged. The case was retried by the court without a jury and again resulted in a verdict in favor of the defendant. The issues were of fact and the conclusions of the court are clearly supported in the record. The judgment will be affirmed.

The factual background of the case appears in our opinion in the former appeal, reported in 149 Pa. Superior Ct. 545, 27 A. 2d 425. Plaintiff's present proofs consist principally, as in the first trial, in the admissions of the pleadings read into the record. In addition, the two letters of the defendant, dated July 22, 1935 and December 6, 1937, referred to in our prior opinion, were received in evidence by agreement. Eight drafts made by the defendant payable to the insured or her beneficiary, in various amounts between June 24, 1933 and January 15, 1937, also were proven and admitted.

The insurance contract in this case was a ten-year-term policy, renewable at its expiration on April 12, 1925 for a further term of ten years at the same premium, without physical examination. There is no suggestion that the insured paid or offered to pay premiums to the insurer after the expiration of the term, and the policy was not renewed. The burden was on plaintiff to prove, as a basic fact essential to recovery, that the insured requested a renewal of the insurance at or before the expiration of its term, and that the defendant breached its contract by refusing to renew. Plaintiff relies on defendant's letter of December 6, 1937, above referred to, as an admission of a demand by the insured for a renewal of the contract and defendant's breach of its obligation

to renew the insurance. In the prior appeal we referred to this letter as containing evidence of a timely request for a renewal of the policy and of defendant's rescission of the agreement by refusing to renew the contract. It was not for us to determine whether the evidence was sufficient to support that conclusion. The significance of the letter was for the lower court, the trier of the facts, and not for us.

Under a valid rule of the municipal court the trial judge may make a general finding (referred to in the rules as a verdict) without a memorandum of the reasons for the finding. *Jann v. Linton's Lunch,* 150 Pa. Superior Ct. 653, 29 A. 2d 219. No memorandum was filed with the verdict in this case. We therefore must look to the opinion of the court, in refusing a new trial and judgment n. o. v., for the findings and conclusions upon which the final judgment in this case rests. The opinion of the court refers to the above letter and the admission contained in it, with this comment: "The defendant's letter (December 6, 1937), while acknowledging receipt of 'letters from the insured asking us to renew the policy', also states as the reason why this request was not complied with that 'the Insurance Department *in 1926* changed the deferred dividend plan', etc. If any inference is to be drawn from this admission it is that renewal demand was made *after* the Insurance Department published its ruling in 1926, that is, *after* the policy had long expired and assured's rights thereunder had lapsed". The other letter of defendant dated July 22, 1935, contains this statement: "In 1925, after ten years' dues were paid, the deceased wrote: 'A total of $648.00 has been paid in. I am now entitled to same' ". The court in effect found that there is no evidence in these two letters of a request for a renewal of the contract which the defendant was bound to honor and that the request for the return of premiums was made by the insured in the naive belief that she was entitled to a refund of all amounts paid by her, since throughout the term of the

policy she had made no claim on the insurer for the payment of benefits. These are reasonable inferences of fact from the evidence which preclude a recovery by plaintiff.

The lower court also properly concluded from the evidence that even if an actual breach of the contract by defendant be assumed, plaintiff is nevertheless barred by the Statute of Limitations. The sight drafts admitted in evidence were made by the defendant in amounts varying from $13.25 to $65.00, the last of which bore the date of January 15, 1937. The first four drafts, issued during the years 1933 through 1935, were made payable to the insured and bore the notation "Div." The remaining drafts, after the death of the insured, were made payable to the beneficiary named in the policy and bore the notation "D.C." From the testimony of defendant's clerk who drew the drafts the trial court properly concluded that the notation on the first four of the drafts identified the payments as dividends and that "D.C.", an abbreviation for "death claim", on the three later drafts referred to similar payments made after the death of the insured. It was plaintiff's contention that all of these payments were made by defendant in recognition of its breach of contract and its consequent liability to return the premiums paid by the insured and that the last payments tolled the statute. The testimony does not support that inference. No reason is suggested why the defendant, a solvent insurer would find it necessary to discharge a liability of a few hundred dollars by installments in small amounts over a period of four years. Moreover, each of the drafts recite that the payment was made "as per the terms and conditions of Policy number C 68982" issued to the insured. The policy provides in section K for the distribution of "the surplus premium income of completed grade to be divided among its persistent non-benefit drawing members" throughout the term of the policy and the above drafts undoubtedly were intended as the pro rata shares due the insured or her

beneficiary on distribution of funds set up by the defendant as unearned premiums. The fact that actually there was no surplus premium account to the credit of policies of the insured's grade at the time of any distribution, nor the fact that the distribution might not have stood the test of legality, is unimportant. A dividend or distribution payment, merely because illegally made, cannot be construed as an admission by the insurer of a breach of its contract such as is alleged in this case and of consequent liability for damages on that score. The evidence was insufficient to support a finding that the above payments were made by the defendant in recognition of a legal duty to return the premiums paid by the insured because of its obligation to renew the policy.

The opinion of the court indicates that the law was properly applied thus: "The established rule in Pennsylvania is that to toll the statute of limitations the payment or acknowledgment must be accompanied by an act on the part of the debtor (the defendant in this case) which clearly and definitely identifies a particular debt to which the payment or acknowledgment has reference. 'It must plainly appear, and not as a matter of conjecture merely, that the payment relied upon was on account of the very debt which is in dispute'. McPhilomy v. Lister, 341 Pa. 250, 19 A. 2d 143, 145. An identification by mere inference from other collateral matters is not sufficient to establish a constructive acknowledgment. Barr v. Luckenbill, 351 Pa. 508, 511, 512; Rosencrunce v. Johnson, 191 Pa. 520, 533, 43 A. 360, 361; White v. Pittsburgh Vein Coal Co., 266 Pa. 145, 150, 109 A. 873, 875".

Findings of a trial judge of the lower court on the facts have the force and effect of a verdict of a jury and since the ultimate finding here is supported by the evidence we are bound by it. *Jann v. Linton's Lunch,* supra; *Moore v. W. J. Gilmore Drug Co.,* 131 Pa. Superior Ct. 349, 200 A. 250.

The judgment is affirmed.

APPEAL IN No. 243 OCTOBER TERM 1947.

A judgment for costs in favor of the plaintiff, is also before us on appeal by the defendant to the above number. At the first trial in this action of assumpsit the lower court found for the defendant and, on March 15, 1941, entered judgment on the finding. On appeal we reversed the judgment with a venire. Following our order the record was remitted and was filed in the lower court on August 4, 1942. The case was retried in the court below but not until May 9, 1946 and judgment was again entered on a finding in favor of the defendant on March 7, 1947. This is the judgment which we affirmed in the order filed this day, supra, number 200 October Term, 1947. On April 7, 1947, plaintiff filed his bill of costs for printing his paper book on the first appeal. A judge of the lower court on June 9, 1947 entered judgment for plaintiff on the bill of costs as filed. This is defendant's appeal from the entry of that judgment.

Section 2 of the Act of June 5, 1913, P. L. 422, 12 PS 1194 provides that when a judgment is reversed by us on appeal, with a venire, "the costs taxed in accordance with existing law shall be paid by the losing party; and on the return of the remittitur in the lower court the proper officer shall enter judgment against said losing party, upon which said judgment due process of law may issue for the collection of the same, unless the said cause of action is again tried in the lower court by the parties . . . within one year after such remittitur is filed . . ." The above Act has no application here. Plaintiff did not file a bill of costs and no judgment for costs was entered following our remittitur in the former appeal until after a final decision of the lower court on a retrial of the case.

The controlling statute is the Act of April 15, 1907, P. L. 83, as amended April 27, 1909, P. L. 263, 12 PS 1193, which in part provides: "In all cases, either in law or equity, wherein an appeal is taken from any judgment, decree, or order to the Supreme or the Supe-

rior Court, the party in whose favor the final decision is rendered shall be entitled to charge, and collect from the losing party as part of the costs, such amount as shall have been expended for printing paperbooks upon said appeal". In *Mahony, Trustee, v. Boenning et al.,* 139 Pa. Superior Ct. 428, 434, 12 A. 2d 483, in construing the Act, we said: "Of course, where the judgment of the appellate court orders or approves a new trial, there is *no final decision* until that trial has been had; and all the costs, including the paper books on the first appeal, must await the outcome of the final trial. If an appeal is taken from the judgment on that trial, the costs of that *appeal* will be payable by the party who loses the final decision on appeal". To the same effect is *Commonwealth v. Trunk,* 320 Pa. 270, 182 A. 540 which holds that the Act applies to criminal cases and the county is liable for the costs of printing the paper books of a defendant who is acquitted on a second trial, awarded by the appellate court on an appeal from a conviction. Cf. *Matthews v. Tyrone Coal Co.,* 74 Pa. Superior Ct. 588; *Tressler v. Emerick,* 84 Pa. Superior Ct. 461.

The final decision in this case was not in favor of the plaintiff and he may not recover the cost of printing his paper books from the defendant.

Judgment (in November 243, October Term, 1947), reversed.