**RENAULT v. L. N. RENAULT & SONS, Inc.**

**Civ. No. 7661.**

United States District Court
E. D. Pennsylvania.
April 26, 1950.

Richter, Lord & Farage, Joseph S. Lord, III, Philadelphia, Pa., for plaintiff.

David Berger, Philadelphia, Pa., Stephen Damico, Atlantic City, N. J., for defendant.

MURPHY, District Judge.

In this diversity action a Pennsylvania plaintiff sought to recover from defendant, a New Jersey corporation, the principal of a twenty-seven year old unsealed demand note together with 162% interest thereon. The jury, being unable to agree to a general verdict, or to answers to any of four interrogatories submitted by the court, was discharged. Defendant moves for judgment under Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A.

Under the evidence the jury would be warranted in finding:

That in 1921 defendant borrowed for corporate purposes $13,417 at six per cent interest from its President, Alexander Renault, on an unsealed demand note to his order. In 1922 plaintiff acquired the note as sole heir and executrix of her deceased husband's estate.

In 1924 the president of defendant corporation (John D'Agostino, then sole owner of all the corporate capital stock) orally promised plaintiff that he would personally guarantee payment of the note, and again, orally promised that the corporation would pay it. Nothing was done thereafter for twenty-two years.

In 1946 plaintiff told the president of defendant corporation (John D'Agostino, then owner of half of shares of defendant corporation—the other half being owned by his mother) that she was in need of money. "He (orally) promised to pay the note off in full" and again " * * * he said he would send (plaintiff) a check for $500.00 immediately and thereafter the company would take care of the note at $100.00 a week until it was paid."

Commencing May 14, 1946, the corporation sent plaintiff a check for $500, June 13, $100, July 28, $200, and thereafter, usually at weekly intervals, up to February, 1947, twenty-nine additional checks each for $100. The checks in the aggre-

gate amounted to $3,700. There was nothing whatever in writing indicating any intention of defendant to make payments on the note, nothing on the checks per se to show the purpose thereof except that defendant was the maker and plaintiff the payee.

Defendant admitted the corporation sent the checks to plaintiff but contended they were in payment for promotional services which plaintiff was engaged by defendant's president to perform for the corporation. When defendant's business declined, plaintiff's services were discontinued and defendant stopped sending checks to plaintiff. The check stubs in defendant's check book for each of the checks sent to plaintiff contain a notation that the checks were issued to cover "expenses" and "promotional expenses". There was nothing whatever on any of defendant's records ante or post litem motam indicating any liability of defendant to plaintiff on the note in question.

Defendant's president denied making any such guarantee or promise as indicated by plaintiff in 1924; he denied having any conversation whatsoever with plaintiff about the note in question in 1946. Says defendant's president, when he learned of the possible existence of a corporate note in 1924 he demanded that plaintiff surrender it. At the time it was misplaced or lost and plaintiff went to her lawyer, had a release prepared which she signed, sealed and delivered to defendant's president for the purpose of discharging the corporation of all obligation on the note.

Defendant challenged the validity of the note at its inception; claimed discharge by release; pled the six year statute of limitations; the New Jersey Statute of Frauds; and lack of any authority in its president qua president to bind the corporation by any such promise as plaintiff suggests.

■ In the consideration of such a motion we are not to be concerned with the weight or the credibility of the testimony nor may we substitute our conclusions for those of the jury on questions of fact. Cases are not to be taken from the jury except in a strong and compelling situation. See Cheffey v. Pennsylvania R. Co., D.C., 79 F.Supp. 252. It is our duty after viewing the evidence and all inferences reasonably deducible therefrom in the light most favorable to the plaintiff to determine whether or not as a matter of law plaintiff's evidence makes out a case upon which the law will afford relief. Schad v. Twentieth Century-Fox Film Corp., 3 Cir., 136 F.2d 991. And see Meyonberg v. Pennsylvania R. Co., 3 Cir., 165 F. 2d 50.

■ Jurisdiction of this court being based upon diversity only, we must consider the questions presented as if we were sitting as a Pennsylvania court.[1] Under the Pennsylvania rule as to conflicts of law we must look to New Jersey law and apply it to the decision of the various questions presented.[2] Where we find no authoritative local decision to be controlling on the precise point we must ascertain and apply what we believe to be

---

1. Guaranty Trust Co. of New York v. York, 326 U.S. 99, at page 108, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231; Jackman v. Equitable Life Assurance Society, etc., 3 Cir., 145 F.2d 945, 947; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L.Ed. 1477, as to the conflict of laws rule to be applied. Cities Service Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196, as to the burden of proof. Guaranty Trust Co. of New York v. York, supra; Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520; Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602, as to the applicable statute of limitations.

2. All of the operative facts occurred in New Jersey. By Pennsylvania law the lex loci contractus governs as to the formality, validity and interpretation of contracts; including the effect, if any, of the statute of frauds. Chicago Pneumatic Tool Co. v. Ziegler, 3 Cir., 151 F.2d 784, 789; Griffin v. Metal Product Co., 264 Pa. 254, 107 A. 713; Bernstein v. Lipper Mfg. Co., 307 Pa. 36, at page 43, 160 A. 770; and see the latter case where performance may occur in several states.

the law which a New Jersey court would apply if called upon to adjudicate under like circumstances.[3] In determining the question as to the alleged bar of the statute of limitations, under Pennsylvania law we must look to see if the action was fully barred under New Jersey law.[4] Defendant being a New Jersey corporation we look to New Jersey law to determine whether D'Agostino had authority to bind the corporation.[5]

From our study of the briefs and an independent investigation of the authorities we feel that the question of the validity of the note [6] and of the effectiveness of the release to discharge the corporation [7] were questions for the jury.

3. Meredith v. City of Winter Haven, 320 U.S. 228, 234, 64 S.Ct. 7, 88 L.Ed. 9; Gallup v. Caldwell, 3 Cir., 120 F.2d 90, at page 94.

4. The Pennsylvania Act of June 26, 1895, P.L. 375, § 1, 12 P.S. § 39 provides "When a cause of action has been fully barred by the laws of the state or country in which it arose, such bar shall be a complete defense to an action thereon brought in any of the courts of this commonwealth." See Cope v. Anderson, supra, Note 3; Hartmann v. Time, Inc., 3 Cir., 166 F.2d 127, 1 A.L.R. 370; In re Fletcher's Estate, Pa. 1942, 45 Pa. Dist. & C. 673.

5. See Beneficial Industrial Loan Corp. v. Smith, 3 Cir., 170 F.2d 44, at pages 45 & 50.

6. *Was the note a valid corporate obligation?*

All officers and shareholders of defendant corporation participated in the loan transaction. A fair inference could be drawn that the corporation received the proceeds of the loan and applied them to corporate purposes. Apart from the very nice question of authority of the makers to bind the corporation under New Jersey law, (Am. Jur. Corp'ns, § 826, p. 831; 19 C.J.S., Corporations, § 1060, p. 583 et seq.; Economy Auto Supply Co., Inc. v. Fidelity Union Trust Co., 105 N.J. L. 206, 144 A. 30; Federal Deposit Ins. Corp. v. Bleakley Corp., 124 N.J.L. 445, 12 A.2d 700; Fidelity Insurance, Trust & Safe-Deposit Co. v. West Penn & S. C. R. Co., 138 Pa. 494, at page 504, 21 A. 21, 21 Am.St.Rep. 911; Scouton v. Stony Brook Lumber Co., 261 Pa. 241, 104 A. 548, 7 A.L.R. 1433); the rule applicable is, though the officers and agents of a corporation may have no inherent or implied authority to borrow money for the corporation it cannot disavow the unauthorized act of borrowing money in its name as long as it retains the benefits of the transaction. See Fletcher Cyc. Corp'ns, Permanent Ed., § 773, pp. 826, 829, 839. See also Id., § 764, p. 802, 805. Howard v. West Jersey & S. S. R. Co., 102 N.J.Eq. 517,

141 A. 755, at page 758, affirmed 104 N. J.Eq. 201, 144 A. 919; Elfenbein v. Luckenbach Terminals, Inc., 111 N.J.L. 67, 166 A. 91; Feist & Feist, Inc., v. A. & A. Realty Co., 105 N.J.L. 461, 145 A. 478. In accord see In re Roberts' Trust Estate, 316 Pa. 545 at page 550, 175 A. 869, 96 A.L.R. 450; C. L. McClain Fuel Corp., etc., v. Lineinger, 341 Pa. 364, 19 A.2d 478.

7. *As to the release*

D'Agostino claimed he purchased from plaintiff her one-half interest in the corporation, including any outstanding obligations for $55,000. Plaintiff's version was that she released D'Agostino from his personal guarantee to pay the note, to better his credit position. The release literally discharged D'Agostino pro se from any obligation on "an alleged note", spelling out the note in question, but says nothing as to the obligation of the corporation qua corporation.

An oral promise to pay the debt of another would be void under the New Jersey Statute of Frauds [N.J.S.A. 25:-1–5, Rev.St.N.J.1877, p. 445, § 5: "A special promise to answer for the debt, default or miscarriage of another person" is void unless in writing. Wills v. Shinn, 42 N.J.L. 138; Saxton v. Landis, 16 N.J.L. 302].

If D'Agostino was a joint obligor, releasing him would release the corporation. [See 2 Williston op. cit. supra, § 333, p. 967, Munyan v. French, 60 N.J. L. 12, 36 A. 771. Accord, Bryant v. Bryant, 295 Pa. 146, 144 A. 904].

"If a creditor voluntarily releases his debtor, it is nearly if not quite universally agreed that a new promise by the debtor is not binding without new consideration * * * ." 1 Williston on Contracts, Rev.Ed., § 159, p. 543.

The effect of the release could not be determined as a matter of law; rather was it under appropriate instructions a question for the jury.

Plaintiff objected that the release was not binding in the absence of consideration. In this she was in error. Distinction must be made between lack of consideration and a failure of consideration.

### As to the statute of limitations.

█ Defendant's plea of the statute of limitations presents a nice question upon which counsel have not cited and we have not found a New Jersey or Pennsylvania case precisely in point. Ordinarily an action on a demand note would have to be commenced within six years of the date of execution and delivery.[8] However, if proper legal requirements are met, a new promise or acknowledgment, or a payment on account, made after the statutory period has run, has the effect of reviving the obligation of the debtor for an additional six years.[9] While Pennsylvania has no similar statute a New Jersey statute, N.J.S.A. 2:24–9, provides, inter alia, "* * * no acknowledgment or promise by words only shall be deemed sufficient evidence of a new or a continuing contract * * * unless * * * in writing * * * signed by the party chargeable thereby."[10] With the proviso, however, that nothing contained therein shall "alter or take away or lessen the effect of any payment * * *."[11]

█ In order that a debt should be revived by payment it must be established that the payment was made on account of the debt in question, and as only a part payment of it. Accordingly, if the only evidence is the making of a payment and the further fact that a larger sum was due the creditor, it is not sufficient evidence to submit to the jury in an action by the creditor for the remainder of his claim. Williston id., § 174; Vaughn v. Hankinson's Adm'r, 35 N.J.L. 79. An oral promise per se is obviously not sufficient. There must be a payment on account accompanied by some act or declaration to show that the debtor recognized the whole claim and intends to apply the payment on account thereof. Romaine v. Corlies, 47 N.J.L. 108, holds that "It is * * * admissible by parol testimony to show upon what account the payment was intended to be appropriated, and upon such payment the law raises a promise to pay the residue of the debt." And again, "The declaration accompanying the payment shows that the debtor intended to pay part of an admitted account, and thereby the balance is saved, as if he had paid part of a promissory note." See also Trenton Banking Co. v. Rittenhouse, 96 N.J.L. 450, 115 A. 443, 36 A.L.R. 343; Davenport v. Kimble, 29 A.2d 850, 21 N.J.Misc. 29. See note 36 A.L.R. 346; 156 A.L.R. 1082; 142 A.L.R. 389. Sellick v. Forster, 120 N.J.L. 497, 1 A.2d 65; Howell v. Wallace, 10 A.2d 486, 18 N.J.Misc. 48.

█ In the foregoing cases where a promise was implied or the statute considered tolled there was no doubt that the payment was on account; the question was whether the whole debt was recognized sufficiently to support an inference of a promise to pay the balance. Was the check here a part payment on account? Of it-

See 1 Williston op. cit., supra, § 109, p. 373, Note 5; id. § 217, p. 657; Wilson v. Stevens, 105 N.J.Eq. 377, 148 A. 392; Aller v. Aller, 40 N.J.L. 446; United & Globe Rubber Mfg. Co. v. Conrad, 80 N.J.L. 286, 78 A. 203, at page 205, Ann. Cas.1912A, 412.

8. N.J.S.A. 2:24–1; Dickerson v. Wilkes-Barre & Hazleton R. Co., 103 N.J.L. 175, 143 A. 618, 62 A.L.R. 266; De Raismes v. De Raismes, 70 N.J.L. 15, 56 A. 170, affirmed, 71 N.J.L. 680, 60 A. 1133. So too in Pa. 12 P.S. § 36; Aarons v. Public Service B. & L. Ass'n, 318 Pa. 113, 117–118, 178 A. 141.

9. See 1 Williston op. cit., supra, § 163, p. 546 et seq.; 34 Am.Jur., Limitations of Actions, § 186, p. 150 et seq.; § 289, p. 233 et seq.; 54 C.J.S., Limitations of Actions, § 302, p. 368 et seq., Wilbur v. Win, 89 N.J.Eq. 278, 103 A. 985; Ryan v. Estes, 105 N.J.L. 201, 143 A. 431; Simpson v. Hudson County Nat. Bank, 141 N.J.Eq. 353, 57 A.2d 473.

See also Williston id., § 174, p. 566; 54 C.J.S., Limitations of Actions, § 321, p. 423 et seq.; 34 Am.Jur. id. § 333, p. 262; Randolph v. General Investors Co., 96 N.J.Eq. 227, 124 A. 765.

10. "Intrinsically, this paragraph of the statute is an adoption of the first section of the English Statute of 9 Geo. IV, c. 14, passed in the Year 1828 and commonly known as Lord Tenterden's Act." Howell v. Wallace, 10 A.2d 486, 487, 18 N.J.Misc. 48.

11. Livingston v. Rein, 133 N.J.Eq. 585, 33 A.2d 840.

self it does not support such a conclusion since there is no purpose stated whatsoever. The check stubs or vouchers and corporate records are to the contrary. The vouchers show the checks were issued to cover "expenses" and "promotional expenses"; the other corporate records show nothing as to any liability on the note in question. The checks were drawn to plaintiff in her individual not her representative capacity. They were deposited in her account and disbursed therefrom for individual purposes. At best there is contradictory evidence; the alleged oral promises versus the other circumstances.

Would a New Jersey court decide, that in view of the conflict, plaintiff had not met her burden as a matter of law? In Rogers v. Newton, 71 N.J.L. 469, 58 A. 1100, it was not clear who made the payment on account; in Smith v. Gavin, 136 A. 428, 5 N.J.Misc. 323, the dispute was whether payment was in full or on account; likewise in Sellick v. Forster, supra. In Dietrich v. National Camp, Patriot Order of America, 143 A. 77, 6 N.J. Misc. 753, there apparently was something in the check itself to identify the debt in question. See Haines' Adm'r v. Watts' Adm'r, 53 N.J.L. 455, 21 A. 1032 at page 1033, which holds by analogy that here the debtor is confronted "not with the mere words of an adversary, but with his own contemporaneous conduct; not asked to contradict what it is said that he promised to do, but simply to explain what he himself did * * *." See note 36 A.L.R. 346; 156 A.L.R. 1082; 142 A.L.R. 397, at page 405. As to the Pennsylvania rule, see McPhilomy v. Lister, 341 Pa. 250, 19 A.2d 143, 142 A.L.R. 385; Brandeis v. Charter Mut. Benefit Ass'n, 163 Pa.Super. 204, at page 209, 60 A.2d 449.

In view of the test to be applied on consideration of the current motion we feel a New Jersey court and a Pennsylvania court would submit this question to a jury. See Parker v. Butterworth, 46 N.J.L. 244, 50 Am.Rep. 407; Becker v. Oliver, 3 Cir., 111 F. 672, at page 677.

*Was the payment and/or promise binding on the corporation?*

Assuming arguendo D'Agostino made the promise outlined by plaintiff, did it constitute a binding corporate obligation? Defendant asserts: (a) lack of authority of the president to bind the corporation; (b) failure to comply with the New Jersey Statute of Frauds, N.J.S. A. 25:1–5, Rev.Stats.N.J. 1877, p. 445, § 5, which requires an agreement which is to be performed over a period in excess of a year to be in writing.[12]

Although D'Agostino owned a half interest in defendant corporation and his mother the other half, plaintiff testified that on occasion he had trouble with his family. Besides D'Agostino there were other members of the Board of Directors, a Chairman of the Board, a Vice-President and a Treasurer. There is not a shred of evidence to indicate that any one, other than D'Agostino, connected with the defendant corporation had any knowledge whatsoever of the note itself; of the alleged promise to pay the note; or of the alleged purpose of the checks, i. e., as payments on the note; all of the corporate records were apparently to the contrary.[13]

To hold the defendant, plaintiff had the burden of proving D'Agostino had authority to act for the corporation[14] in order to make it liable on a promise to pay $13,417

---

12. Barnes v. P. & D. Mfg. Co., 123 N. J.L. 246, 8 A.2d 388, 389; Reynier v. Associated Dyeing and Printing Co., 116 N.J.L. 481, at page 484, 184 A. 780, 104 A.L.R. 1002. In view of our disposition of (a), it will be unnecessary to discuss (b). See Rothenberg v. H. Rothstein & Sons, 3 Cir., 181 F.2d 345.

13. There being no knowledge in the other officers or directors, there could be no ratification. Spencer Heater Co. v. Abbott, 91 N.J.L. 594, 104 A. 91; Interstate Chemical Co. v. James Leo Co., 94 N.J.L. 513, 110 A. 903; Clement v. Young-McShea Amusement Co., 70 N.J. Eq. 677, 67 A. 82, 118 Am.St.Rep. 747; Passaic-Bergen Lumber Co., v. U. S. Trust Co., 110 N.J.L. 315, 164 A. 580.

14. Kelly, Murray, Inc., v. Lansdowne Bank & Trust Co., 299 Pa. 236, 149 A.

principal, $21,735, interest, or $35,152.64 with interest of six per cent on the unpaid balance; an obligation to which the corporation had what it contends was a complete release; and certainly a complete defense by way of the statute of limitations.[15]

 Of course the statute may be waived by express agreement. Where, however, it is by a written promise or acknowledgment, New Jersey adheres to the strict view (cf. Williston Id., § 164) that an acknowledgment by an agent would be insufficient. De Raismes v. De Raismes, 70 N.J.L. 15, 56 A. 170, affirmed, 71 N.J.L. 680, 60 A. 1133. cf. Davenport v. Kimble, supra. Even though part payments are not within the statute, to bind a defendant they must be voluntary and in pursuance of the debtor's consent or direction; made by the debtor himself or an authorized agent. P. Ballantine & Son v. Macken, 94 N.J.L. 502, 110 A. 910, 10 A.L.R. 836;

Fidelity Union Trust Co. v. Fitzpatrick, 134 N.J.L. 250, 46 A.2d 837.

 Prima facie, authority to manage a business does not include authority to make unusual or extraordinary contracts. Restatement Law of Agency, § 73, comment b. While an officer of a corporation, may in some cases, under proper authorization, waive the right to plead the statute of limitations, as a general rule in the absence of evidence to show such authority, a president of a corporation can not qua president bind the corporation in this regard, either by promise or part payment. See 13 Am.Jur.Corpns.,§ 930, p. 896; note 161 A.L.R. 1443. We have found no case in point in New Jersey and only one case on the question in Pennsylvania. Where the question has arisen elsewhere, most courts have ruled as a matter of law that such power was non existent.[16] In a few cases because of the extraordinary power granted to the particular president, the courts found the power to waive did exist.[17]

190; Alter v. Logan Trust Co., 360 Pa. 491, at page 496, 62 A.2d 25. Aerial League of America v. Aircraft Fireproofing Corp., 97 N.J.L. 530, 117 A. 704.

15. See 34 Am.Jur. id., supra, § 186, p. 150; Mr. Justice Story in Bell v. Morrison, 1 Pet. 351, at pages 359 and 361, 26 U.S. 351, at pages 359 and 361, 7 L. Ed. 174; Guaranty Trust Co. of New York v. U. S., supra, 304 U.S. 126, at page 136, 58 S.Ct. 785, at page 790, 82 L.Ed. 1224. "The statute of limitations is a statute of repose, designed to protect citizens from stale and vexatious claims, and to make an end to the possibility of litigation after the lapse of a reasonable time. It has long been regarded by this court as a meritorious defense, in itself serving a public interest." "Courts do not now, unless compelled by the force of former decisions, give a strained construction, to evade the effect of those statutes." McCluny v. Silliman, 3 Pet. 270, at page 277, 28 U.S. 270, at page 277, 7 L.Ed. 676. "The defense of the statute of limitations is not a technical defense but substantial and meritorious. The great weight of modern authority is to this effect." U. S. v. Oregon Lumber Co., 260 U.S. 290, at page 299, 43 S.Ct. 100, 67 L.Ed. 261.

Also see Executors of Conover v. Conover, 1 N.J.Eq. 403, 410, 411.

16. Kennedy v. Mutual Life Ins. Co., 1932, 162 Md. 340, 159 A. 780, on "extraordinary problems"; Salt Lake Valley Loan & Trust Co. v. St. Joseph Land Co., 1928, 73 Utah 256, 273 P. 507; Commercial Nat. Bank v. Henderson, La.App.1937, 173 So. 790; Reuter Organ Co. v. First Methodist Episcopal Church, 1941, 7 Wash.2d 310, 109 P.2d 798; Hilliard v. Upper Coos R. R., 1913, 77 N.H. 129, 88 A. 993; Binge v. Gulf Coast Orchards Co., Tex.Civ.App., 93 S.W.2d 813; Peoples Bank & Trust Co. v. Tar River Lumber Co., 221 N.C. 89, 19 S.E.2d 138.

17. Chestnut Street Trust & Savings Co. v. Record Pub. Co., 227 Pa. 235, 75 A. 1067, 136 Am.St.Rep. 874. In McClain Fuel Corp., etc., v. Lineinger, 341 Pa. 364, 19 A.2d 478, another question was involved. The president had been given sweeping authority. In Kelly Asphalt Block Co. v. Brooklyn Alcatraz Asphalt Co., 190 App.Div. 750, 180 N.Y.S. 805, plaintiff sought to recover money already paid, to use the statute of limitations as a sword rather than a shield; the powers granted the president were sweeping. Jacksonville American Pub.

In Liberty Baking Co. v. Heiner, 3 Cir., 37 F.2d 703, a tax case, the waiver was for the corporation's benefit.

■ The distinction between usual and extraordinary duties is generally applied where the question of authority of the president to bind the corporation arises. See 19 C.J.S., Corporations, § 1001. There is an excellent statement of the rule in Pennsylvania in Kelly, Murray, Inc., v. Lansdowne Bank and Trust Co., 299 Pa. 236, at page 242, 149 A. 190. And see Severance v. Heyl and Patterson, 123 Pa. Super. 553, at pages 559 and 563, 187 A. 53. The New Jersey cases are in accord.[18] We cite as an example, Mausert v. Christian Feigenspan, 68 N.J.Eq. 671, 63 A. 610, at page 611, 64 A. 801. "The act of the president of a corporation, unless it is shown to pertain to his official duty, or to be within the scope of his employment, cannot be regarded as the act of the corporation, and is not binding on it. * * * His powers over its business and property are strictly the powers of an agent, powers delegated to him by the directors, who are the managers of the corporation, and the persons in whom the control of its business and property is vested. He may, without any special authority from the board of directors, perform all acts of an ordinary nature, which, by usage, or necessity, are incident to his office, and may bind the corporation by contracts in matters arising in the usual course of business. To this extent, by virtue of his office, he is the agent of the corporation; but beyond this his official position gives him no more control of its property, funds, or business, than any other director."

And see Economy Auto Supply Co. v. Fidelity Union Trust Co., 105 N.J.L. 206, 144 A. 30.

The same rule applies in a family corporation. Yeskel v. Murray Holding Co., 140 N.J.Eq. 195, 54 A.2d 224, affirmed 141 N.J.Eq. 366, 57 A.2d 390. See Cintas v. American Car and Foundry Co., 131 N.J. Eq. 419, 25 A.2d 418.

■ Where the evidence is undisputed, the trial court must determine its effect as a matter of law. See Kelly, Murray, Inc. v. Lansdowne Bank and Trust Co., supra. And as to New Jersey, see the cases cited in Grinnell Co., Inc., v. Miller, 3 Cir., 150 F.2d 345, at pages 355, 356.

■ In our judgment the plaintiff failed to show that the promise of D'Agostino, if made, was binding on the corporation. As to the promise and the checks, there was absolutely no evidence to support either conscious adoption or ratification. Judgment must, therefore, be granted to the defendant pursuant to his motion under Rule 50(b).

An order to that effect will be handed down this date.

---

Co. v. Jacksonville Paper Co., 143 Fla. 835, 197 So. 672, involved was an ordinary act, the president was the actual managing head of the corporation.

18. Aerial League of America v. Aircraft Fireproofing Corp., 97 N.J.L. 530, 117 A. 704. Thomson v. Central Passenger Ry. Co., 80 N.J.L. 328, 78 A. 152; Stokes v. New Jersey Pottery Co., 46 N.J.L. 237, president no power to give a bond and warrant to confess judgment against corporation; Titus & Scudder v. Cairo & Fulton R. Co., 37 N.J.L. 98; K. S. S. Realty Co., Inc., v. Ostroff, 100 N.J.Eq. 128, 135 A. 869; Elblum Holding Corp. v. Mintz, 120 N.J.L. 604, 1 A.2d 204; Beck v. Edwards and Lewis, 141 N.J.Eq. 326, 57 A.2d 459, 464. "Our decisions have always been that the president of a corporation, although its executive head, is not empowered to bind the corporation in all of its business affairs." Knopf v. Alma Park, Inc., 105 N.J.Eq. 299, 147 A. 590; Iback v. Elevator Supplies Co., Inc., 118 N.J.Eq. 90, at pages 91, 92, 177 A. 458. Morris County Building & Loan Ass'n v. Walters, 123 N.J.Eq. 548, 198 A. 756; Federal Deposit Ins. Corp. v. Beakley Corp., 124 N.J.L. 445, 12 A.2d 700; and in Murphy v. W. H. & F. W. Cane, Inc., 82 N.J.L. 557, 559, 82 A. 854, Ann.Cas.1913D, 643, the president had had general powers conferred upon him or had previously exercised such powers with the directors consent.